Accordingly, we AFFIRM the decision of the district court.

**STONEWALL UNION and Craig Covey,**
**Plaintiffs–Appellants,**

v.

**CITY OF COLUMBUS, Alphonso Mont-**
**gomery, and Dwight Joseph,**
**Defendants–Appellees.**

No. 90–3643.

United States Court of Appeals,
Sixth Circuit.

Argued March 21, 1991.

Decided May 6, 1991.

David Goldberger (argued), Ohio State University College of Law, Columbus, Ohio, for plaintiffs-appellants.

James J. Fais, City Prosecutor (argued), City Prosecutor's Office for the City of Columbus, Columbus, Ohio, for defendants-appellees.

Before KEITH and MARTIN, Circuit Judges, and CONTIE, Senior Circuit Judge.

CONTIE, Senior Circuit Judge.

Plaintiffs-appellants, Stonewall Union and Craig Covey, appeal the district court's grant of summary judgment to defendants-appellees, City of Columbus, Alphonso Montgomery, Director of Public Safety, and Dwight Joseph, Chief of the Division of Police, in this action which challenges the constitutionality of a City of Columbus ordinance requiring fees for a parade permit. For the following reasons, we affirm in part and reverse in part. .

## I.

Plaintiffs-appellants, Stonewall Union and Craig Covey, bring this action challenging the constitutionality of the City of Columbus ordinance regulating parades, processions and other moving assemblages. Section 2111.03 of the Columbus Municipal Code requires an applicant for a parade permit to pay an $85.00 fee to cover the expenses incident to processing the application for a parade permit. Section 2111.04 requires the applicant to pay for the cost of police officers and police vehicles which the Director of Public Safety determines are necessary to control traffic along the route of the planned parade.

Stonewall Union is a nonprofit civil rights organization formed for the purpose of advocating and supporting the civil liberties of gay and lesbian persons. One of the ways in which it carries its message to the public is by holding an annual gay rights parade on the fourth Sunday in June in downtown Columbus. The parade has been an annual occurrence since June 1982 and is held in conjunction with similar parades by gay rights organizations in other large cities throughout the United States.

In March 1985, Craig Covey, the executive director of Stonewall Union, sought a permit on behalf of the Union that would authorize it to hold a parade in June 1985. Covey also sought two additional permits for related activities: one allowing the Union to assemble its parade in Goodale Park and the other authorizing an assembly on the Ohio Statehouse grounds where speeches would be made at the conclusion of the parade.

Stonewall Union obtained permits to hold its assemblies from the city's park department and the State of Ohio respectively free of charge. The City of Columbus License Section, however, refused to accept an $85.00 check from Mr. Covey to pay for the parade permit processing fee until the Union presented it with a receipt showing prepayment of the fee for police services.

Under the Columbus ordinance, before conducting a parade upon city streets, the organizer must first obtain a permit and prepay a fee representing the cost for processing the permit application and the predetermined cost for the maintenance of traffic control along the parade route. The process begins when an applicant submits a parade permit application and pays a filing fee of $85.00 to the city's license section. The application is then forwarded to the Columbus Police Traffic Bureau for a determination of the number of police officers and vehicles necessary to control traffic along the designated parade route. The

applicant is then required to prepay the cost for traffic control before the permit is issued. In the present case, the total amount due was $757.50, representing $85 for the parade permit fee and $672.50 for the necessary traffic control services.[1]

Plaintiffs contend that the fee requirements run afoul of the First Amendment as applied to the states by the Fourteenth Amendment. Although they paid the fee and held the parade as they have done every year since 1985, plaintiffs filed suit on May 16, 1985 in the United States District Court for the Southern District of Ohio. On May 30, 1985, plaintiffs filed a motion seeking a preliminary injunction to compel the City of Columbus to issue a parade permit to Stonewall Union without requiring payment of a permit application fee in the amount of $85.00 and costs for traffic control incident to the parade. In response to the plaintiffs' motion for a preliminary injunction, the defendants filed a memorandum in opposition to the preliminary injunction and a motion for summary judgment. On June 20, 1985, the district court denied the plaintiffs' application for a preliminary injunction and on June 25, 1985, denied a request by the plaintiffs for a stay pending appeal. The Court of Appeals for the Sixth Circuit thereafter affirmed the district court's judgment on May 24, 1986. The United States Supreme Court denied plaintiffs' application for a stay on June 17, 1986. On July 14, 1986, this court denied the plaintiffs' petition for rehearing en banc. Finally, the plaintiffs filed a cross-motion for summary judgment. The district court granted defendants' motion for summary judgment on June 28, 1990, and plaintiffs timely filed this appeal.

## II.

Plaintiffs first argue that the Columbus ordinance is unconstitutional on its face because it creates a use tax and operates as a prior restraint that abridges plaintiffs' freedom of speech in violation of the First Amendment, because no parade can be held on city streets without prepaying the city for a permit and the police services required by the parade.

The leading case on the constitutionality of regulations governing the use of public streets for parades is *Cox v. New Hampshire*, 312 U.S. 569, 61 S.Ct. 762, 85 L.Ed. 1049 (1941). In *Cox*, a state statute requiring marchers to obtain a license and to pay a fee of not more than $300.00 before parading on public streets was attacked as an unconstitutional abridgement of First Amendment rights. In upholding the validity of the state law, the Supreme Court explicitly recognized the right of a municipality to impose regulations governing the use of public streets for the maintenance of public order.

> Civil liberties, as guaranteed by the Constitution, imply the existence of an organized society maintaining public order without which liberty itself would be lost in the excesses of unrestrained abuses. The authority of a municipality to impose regulations in order to assure the safety and convenience of the people in the use of public highways has never been regarded as inconsistent with civil liberties but rather as one of the means of safeguarding the good order upon which they ultimately depend. The control of travel on the streets of cities is the most familiar illustration of this recognition of social need. Where a restriction of the use of highways in that relation is designed to promote the public convenience in the interest of all, it cannot be disregarded by the attempted exercise of some civil right which in other circumstances would

---

**1.** The exact amount to be prepaid by Stonewall Union is in dispute. Plaintiff Craig Covey claims that the Columbus Police Traffic Bureau informed him that twenty-three police officers and five police vehicles would be assigned for traffic control purposes at a cost of $1,090.70. The City of Columbus contends the original sum was $672.50, with the increase in cost resulting from the addition of five extra officers pursuant to Covey's request. The district court concluded that this dispute did not preclude the court from resolving the case for the exact amount charged is immaterial. We agree. The essence of plaintiffs' claim is that "user fees" imposed for exercising constitutional rights are unconstitutional. Thus, as long as the fee exceeds a nominal amount, the issue before the court remains the same regardless of the exact amount in dispute.

be entitled to protection. One would not be justified in ignoring the familiar red traffic light because he thought it his religious duty to disobey the municipal command or sought by that means to direct public attention to an announcement of his opinions.

*Id.* at 574, 61 S.Ct. at 765. The question in each case is whether the traditional right to regulate the use of the streets for parades is exercised by the municipality so as "not to deny or unwarrantedly abridge the right of assembly and the opportunities for the communication of thought and the discussion of public questions immemorially associated with resort to public places." *Id.* The Supreme Court determined that the statute in *Cox* involved only considerations of "time, place and manner so as to conserve the public convenience" and found that the limited authority conferred on the licensing board did not contravene any constitutional right. *Id.* at 575–76, 61 S.Ct. at 765–66.

Of special significance to the present case is the Court's consideration in *Cox* of the constitutionality of a requirement that a fee be paid in advance in order to obtain a parade license. The New Hampshire Supreme Court had construed the statute as requiring a "reasonable fixing of the amount of the fee," which could vary from a nominal amount up to $300, depending on the length of the parade, the crowds drawn, and the public expense of policing the spectacle. In referring to the fee charged, the Court stated:

> The fee was held to be "not a revenue tax, but one to meet the *expense incident to the administration of the Act and to the maintenance of public order in the matter licensed." There is nothing contrary to the Constitution in the charge of a fee limited to the purpose stated.* The suggestion that a flat fee should have been charged fails to take account of the difficulty of framing a fair schedule to meet all circumstances, and we perceive no constitutional ground for denying to local governments that flexibility of adjustment of fees which in the light of varying conditions would tend to conserve rather than impair the liberty sought.

*Id.* at 577, 61 S.Ct. at 766 (emphasis added).

■ In the face of this explicit language in *Cox*, plaintiffs urge this court to either ignore it as dictum or to disregard it as outdated. However, we believe that *Cox* is dispositive of this issue. The Supreme Court considered a municipality's right to impose a license fee for parade permits and found that as long as the fee was designed to meet the expenses incident to the administration of the law and the cost of maintaining public order for the parade, such a charge did not impermissibly burden First Amendment rights.

Subsequent Supreme Court cases do not suggest otherwise. In *Murdock v. Pennsylvania,* 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292 (1943), decided only three years after *Cox,* the Court found unconstitutional a city ordinance which required a religious group to pay a flat license fee as a condition for conducting its distribution activities. The Court concluded that the licensing fee was essentially a licensing tax because the fee was "fixed in amount and unrelated to the scope of the activities of petitioners or to their realized revenues." Nor was it a nominal fee imposed as a regulatory measure to defray the expenses of policing the activities in question. Nor was it in any way apportioned. *Id.* at 113–14, 63 S.Ct. at 875. In the present case, as in *Cox* and unlike *Murdock,* the City of Columbus seeks to recoup the expenses incurred in processing and issuing the parade permit and in providing traffic control. Although the fee assessed for processing the permit is a flat fee, the $85.00 is directly apportioned to the administrative cost of processing the permit application. The cost assessed for traffic control is dependent on relevant factors such as time, date, route length, the number of participants, and the number of vehicles. For these reasons, we find that the fees at issue resemble the costs imposed in *Cox* and are not designed to extract a tax on those who choose to exercise their First Amendment rights as was the case in *Murdock.*

In *United States v. Grace*, 461 U.S. 171, 103 S.Ct. 1702, 75 L.Ed.2d 736 (1983), the issue before the Court was the constitutionality of an ordinance that placed an absolute prohibition on the exercise of First Amendment rights in the Supreme Court building, on its grounds, and on the public sidewalks in front of the Supreme Court building. Plaintiffs argue that the Court's discussion of the nature of streets, sidewalks, and parks and the severe restrictions on the government's ability to permissively regulate expressive conduct undermines *Cox*. The Court in *Grace* stated:

> "[P]ublic places" historically associated with the free exercise of expressive activities, such as streets, sidewalks, and parks, are considered, without more, to be "public forums." In such places, the government's ability to permissibly restrict expressive conduct is very limited.

*Id.* at 177, 103 S.Ct. at 1707 (citations omitted). The *Grace* Court found the ordinance unconstitutional as applied to the public sidewalks surrounding the Court building because it could not be justified as a reasonable place restriction. *Id.* at 183, 103 S.Ct. at 1710. However, contrary to plaintiffs' contention, the *Grace* decision reaffirms the ability of a governmental entity to restrict expressive conduct by "reasonable time, place, and manner regulations as long as the restrictions are 'content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication.'" *Id.* at 177, 103 S.Ct. at 1707.

Application of the standards articulated in *Grace* to the Columbus ordinance indicates that it is a constitutionally permissible regulation of expressive conduct. On its face, the ordinance is content-neutral. It is tailored to serve a significant government interest in protecting the public, protecting the paraders, and promoting the public convenience in the use of streets by requiring professional police officers to be used for traffic control. These objectives could not be achieved through less restrictive means. There are ample alternative

channels of communication available to plaintiffs, who are free to use the sidewalks for their march to the Statehouse without payment of any fee,[2] and who may assemble in Columbus parks without paying a fee.

For these reasons, we find that the Columbus ordinance on its face is a constitutionally permissible, content-neutral, time, place, and manner regulation of expressive conduct rather than an impermissible prior restraint or use tax.

### III.

Plaintiffs also contend that the ordinance is facially unconstitutional because the Director of Public Safety is vested with unrestricted discretion in establishing the amount the parade applicant is assessed for police services. Specifically, plaintiffs challenge the procedure by which the number of police officers required to supervise the safe execution of the parade is determined by the Director of Public Safety, arguing that the ordinance contains inadequate standards, and consequently, lends itself to administrative manipulation and potential bias.

■ It is well recognized that an ordinance which grants an administrative body or government official unfettered discretion to regulate the licensing of activities protected by the First Amendment is unconstitutional. *Kunz v. New York*, 340 U.S. 290, 294, 71 S.Ct. 312, 315, 95 L.Ed. 280 (1951). Such unrestricted discretion increases the likelihood that the government official may discriminate based upon the content of the "speech" or the viewpoint of the speaker. *City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 763–64, 108 S.Ct. 2138, 2147–48, 100 L.Ed.2d 771 (1988); *Cox v. Louisiana*, 379 U.S. 536, 557–58, 85 S.Ct. 453, 465–66, 13 L.Ed.2d 471 (1965).

■ However, we do not find the Columbus ordinance to be such an ordinance.

---

**2.** On May 18, 1985, approximately 5,000 members of the Boy Scouts of America celebrated their Diamond Jubilee by marching to the State capitol building. The march was conducted on the public sidewalks without the requirement of a street parade permit or the payment of a fee.

Section 2111.04 of the Columbus ordinance provides that the following factors are to be considered in determining the number of officers necessary for policing a parade: time, date, route, length, number of participants and vehicles. Lt. Karl Barth of the police department stated in an affidavit to the district court that standard criteria are used to determine the optimal number of police officers required, which include the following:

(1) The proposed route and the designated route for the parade.

(2) The time of day that the event is to take place.

(3) The date and day of the week proposed.

(4) The general traffic conditions in the area requested, both vehicular and pedestrian. Special attention is given to the rerouting of the vehicles or pedestrians normally using the requested area.

(5) The number of marked and unmarked intersections along the route requested, together with the traffic control devices present.

(6) If traffic must be completely rerouted from the area, then the number of marked and unmarked intersections and the traffic control devices are taken into consideration.

(7) The estimated number of participants.

(8) The estimated numbers of viewers.

(9) The nature, composition, format and configuration of the parade or run.

(10) The anticipated weather conditions.

(11) The estimated time for the parade, run or event.

We believe these criteria constitute objective and definitive standards related to traffic control to guide the licensing authority and prevent unfettered discretion.

Plaintiffs make much of the fact that the police officer charged with responsibility for determining the amount of police support required commented that "I still have in the back of my mind that there could be a variable of some type," alleging that this remark indicates that decisions are subjectively based. Although the officer conceded that there may remain an unknown variable, it is evident that this variable is related to traffic control. Although one of the variables involves "the nature ... of the parade," it is clear that when read in context this variable is related to the size of the parade and estimated number of viewers, not the degree of hostility or violence the parade may evoke.

Plaintiffs rely on cases in which the fee assessed depended on the controversial nature of the rally and the potential for hostile counter activity, *Central Florida Nuclear Freeze Campaign v. Walsh*, 774 F.2d 1515, 1517 (11th Cir.1985), *cert. denied*, 475 U.S. 1120, 106 S.Ct. 1637, 90 L.Ed.2d 183 (1986), or on cases in which the petitioner must post bond for police protection or obtain special event insurance coverage based on the content of the speech. *Invisible Empire of the Knights of the Ku Klux Klan v. Mayor of Thurmont*, 700 F.Supp. 281, 285 (D.Md.1988); *Invisible Empire of the Knights of the Ku Klux Klan v. City of West Haven*, 600 F.Supp. 1427, 1429 (D.Conn.1985). The fees assessed in these cases depended on the administrator's assessment of the amount of hostility likely to be created by the parade based on its content. The Supreme Court has repeatedly rejected the restriction of expression protected by the First Amendment based on a fear of violence. *Gooding v. Wilson*, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972); *Brandenberg v. Ohio*, 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969); *Edwards v. South Carolina*, 372 U.S. 229, 83 S.Ct. 680, 9 L.Ed.2d 697 (1963); *Terminiello v. City of Chicago*, 337 U.S. 1, 69 S.Ct. 894, 93 L.Ed. 1131 (1949); *Cantwell v. Connecticut*, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940). In contrast, the Columbus ordinance does not permit speculation about the degree of violence a parade may provoke, but instead protection of the marchers is provided without consideration of its cost. Because the Columbus ordinance contains objective standards related to traffic control and not related to speculation about the potential for disturbances based on the parade's content, we

find that the scheme for assessing the costs of traffic control is not unconstitutional.

## IV.

Plaintiffs argue that under the First Amendment only a nominal fee may be charged for a parade license and the Columbus ordinance is unconstitutional because it does not limit charges to nominal amounts. Plaintiffs rely on *Central Florida Nuclear Freeze Campaign*, 774 F.2d at 1523 for this proposition,[3] but we believe this case misreads *Cox* as permitting only nominal charges for policing a parade. The fee approved in *Cox* was not nominal, but instead ranged "from $300 to a nominal amount." 312 U.S. at 576, 61 S.Ct. at 766. The Court found nothing contrary to the Constitution in the charge of a fee limited to the purpose of meeting the expenses incident to the administration of the licensing statute and to the maintenance of public order. *Id.* at 577, 61 S.Ct. at 766.

Plaintiffs also rely on *Murdock v. Pennsylvania*, 319 U.S. at 116, 63 S.Ct. at 876, but *Murdock* did not overrule *Cox*'s endorsement of charges greater than a token amount. Although the Court in *Murdock* invalidated a flat license fee levied on distributors of religious literature, the Court distinguished *Cox*, stating that in reviewing the Pennsylvania ordinance, it was not confronted with a state regulation of the streets to protect and insure the safety, comfort, or convenience of the public.

> Furthermore, the present ordinance is not narrowly drawn to safeguard the people of the community in their homes against the evils of solicitations. As we have said, it is not merely a registration ordinance calling for an identification of the solicitors so as to give the authorities some basis for investigating strangers coming into the community. And the *fee is not a nominal one, imposed as a regulatory measure and calculated to defray the expense of protecting those on the streets and at home against the abuses of solicitors.*

*Id.* (emphasis added) (citations omitted). We believe that plaintiffs' reliance on the *Murdock* Court's use of the word "nominal" is misplaced. The basis of the *Murdock* decision was that the flat license tax was not justified by any legitimate state interest, not that it exceeded a nominal amount. The reasoning in *Cox* establishes that parade permit fees are constitutionally permissible as long as they are attributable to the cost of administrating the statute and ensuring public safety. *See Eastern Connecticut Citizens Action Group v. Powers*, 723 F.2d 1050, 1056 (2d Cir.1983) (license fee invalidated because plaintiffs failed to show that the fee charged was equal to the administrative costs incurred); *Fernandes v. Limmer*, 663 F.2d 619, 633 (5th Cir.1981) (licensing fee to be used in defraying administrative costs is permissible if not in excess of costs of administration), *cert. dismissed*, 458 U.S. 1124, 103 S.Ct. 5, 73 L.Ed.2d 1395 (1982); *Baldwin v. Redwood City*, 540 F.2d 1360, 1372 (9th Cir.1976) ("In some circumstances a city may both require a permit for activity involving free expression without violating the First Amendment and also collect fees that fairly reflect costs incurred by the city in connection with such activity"), *cert. denied*, 431 U.S. 913, 97 S.Ct. 2173, 53 L.Ed.2d 223 (1977).

We believe the district court in the present case articulated the correct test for assessing whether the fees were unconstitutionally burdensome to the exercise of plaintiffs' First Amendment right to parade—whether the fees were reasonably related to the expenses incident to the administration of the ordinance and to the maintenance of public safety and order.

Plaintiffs' argument that the fees were excessive and constituted a profit for the city is not borne out by the record. For example, the fact that it takes only a few minutes to process a license does not mean that the fee must be determined by the

---

**3.** The other case on which plaintiffs rely for this proposition, *Nationalist Movement v. City of Cumming*, 913 F.2d 885, 891 (11th Cir.1990), was vacated and a rehearing en banc was scheduled during the week of February 11, 1991. 921 F.2d 1125 (11th Cir.1990), *cert. denied*, ––– U.S. –––, 111 S.Ct. 767, 112 L.Ed.2d 787 (1991).

amount of time it takes to process. Instead, the City of Columbus used the "full cost" accounting method, which an employee of David M. Griffith and Associates, the accounting firm hired by the city to calculate the cost, stated was the standard approach to government cost accounting. Although plaintiffs disagree with the way the fees are calculated, we do not believe that unless they can demonstrate that the costs are excessive or unreasonable that they have a constitutional claim. We don't believe, for example, that it would be appropriate for this court to tell a city that it must use regular police, rather than special-duty police, to supervise the parade and to assess costs on this basis. As the Supreme Court in *Cox* stated, "We perceive no constitutional ground for denying to local governments that flexibility of adjustment of fees which in the light of varying conditions would tend to conserve rather than impair the liberty sought." 312 U.S. at 577, 61 S.Ct. at 766. In the present case, there is no evidence that the fees were charged for anything other than processing costs and traffic control. Because we find no evidence that these fees were excessive or unreasonable, we do not find that the amount of the fees impermissibly burdened plaintiffs' First Amendment rights.

## V.

■ Plaintiffs next contend that the ordinance is unconstitutional because it does not provide an exemption for indigent speakers or groups. Plaintiffs rely on a number of cases involving either the electoral process, *Lubin v. Panish*, 415 U.S. 709, 722, 94 S.Ct. 1315, 1322, 39 L.Ed.2d 702 (1974); *Bullock v. Carter*, 405 U.S. 134, 149, 92 S.Ct. 849, 858, 31 L.Ed.2d 92 (1972), or demonstrations, *Invisible Empire of the Knights of the Ku Klux Klan v. Mayor of Thurmont*, 700 F.Supp. at 286; *Central Florida Nuclear Freeze Campaign*, 774 F.2d at 1523; *Invisible Empire of the Knights of the Ku Klux Klan v. City of West Haven*, 600 F.Supp. at 1435. However, all of these cases are factually distinguishable from the present case in one important way. In each of these cases, failure to satisfy the fee prerequisite pre-

cluded the prospective participants' involvement in the constitutionally protected activity. In contrast, in the present case, an alternative forum is available—the Columbus sidewalks which parallel the streets are free for purposes of conducting a parade and the parks are available without cost for related speech activities. The cases on which plaintiffs rely for the proposition that alternative forums have been found to be unacceptable deal with failure to administer a license application process in a content-neutral manner, *Collin v. Chicago Park District*, 460 F.2d 746, 752 (7th Cir. 1972), or blanket prohibitions, *Schneider v. New Jersey*, 308 U.S. 147, 163, 60 S.Ct. 146, 151, 84 L.Ed. 155 (1939); *Sixteenth of September Planning Committee v. City of Denver*, 474 F.Supp. 1333, 1340 (D.Colo. 1979). In the present case, on its face, the ordinance is not content-specific and does not create a blanket prohibition. Because we believe the availability of the sidewalks and parks provides a constitutionally acceptable alternative for indigent paraders, we find that the lack of an indigency exception does not render the ordinance constitutionally invalid.

## VI.

■ To conclude, we believe that all of plaintiffs' "unconstitutional on its face" arguments fail and the ordinance passes constitutional muster as it is presently worded. However, even if the ordinance is facially valid, we must determine whether it is discriminatorily applied. As the Supreme Court in *Cox* stated, the requirements for a parade permit license and fees must be administered with "uniformity of method of treatment upon the facts of each application, free from improper or inappropriate considerations and from unfair discrimination." 312 U.S. at 576, 61 S.Ct. at 766.

■ Plaintiffs assert two different arguments. The first argument is that because the City of Columbus sponsors some parades and pays for the permit fees out of city funds, it is waiving the fee for some groups in violation of the ordinance's express prohibition against waivers,

§ 2111.08, and is not applying the ordinance in a content-neutral manner. However, the First Amendment guarantee of freedom of speech does not mean that the government must provide funds for or sponsor all speech equally. In the abortion arena, the Supreme Court upheld the constitutionality of the Hyde Amendment, which prohibited the use of federal medicaid funds to perform abortions. *Harris v. McRae*, 448 U.S. 297, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980). The Court indicated that the government may sponsor health care programs for pregnant women without sponsoring abortion, because "it simply does not follow that a woman's freedom of choice carries with it a constitutional entitlement to the financial resources to avail herself of the full range of protected choices." *Id.* at 316, 100 S.Ct. at 2688. Likewise, in the present case, although plaintiffs have a First Amendment right to parade on behalf of gay and lesbian rights, they do not have a right to demand that the City of Columbus sponsor that right by paying their parade permit fees because it sponsors other speech-related activities. If defendants can adequately show that the parades which they have sponsored and for which they have paid the permit fees are reasonably related to the government function which the sponsoring department of the city government performs, the fact that the City of Columbus sponsors and pays the parade permit fees for certain activities related to government functions does not mean that the ordinance is discriminatorily applied.

Plaintiffs also argue that the City of Columbus makes frequent exemptions in charges for permit fees and police services, which indicate that the ordinance is discriminatorily applied. We believe a rational distinction can be made between two activities which the city has determined do not constitute "a parade." A funeral procession is not a parade because it does not require the closing off of streets, but requires only that the cars involved will be allowed to continue through red lights in order to keep the procession together. This procession does not interfere with the flow of traffic in the same way that a parade does, which requires the closing off of entire streets. A presidential motorcade involves the coordination of both federal and state police and officials and is incident to the security provided to all presidential candidates. We believe it is, therefore, reasonable for the city to make an exception for presidential motorcades, because security detail can be distinguished from a parade.

However, plaintiffs have described other exceptions, which they allege constituted a "parade," for which a permit and fees were not required. We will discuss three as an example.

The first instance is the city's alleged payment of the fee for the Columbus Dispatch's 10 K run. The 10 K run is sponsored by a Columbus newspaper—the Columbus Dispatch. If a profit-making entity sponsors an event and receives publicity by so doing, we don't believe it is appropriate for the City of Columbus to pay the parade permit fees. At her deposition, Sally Freeman, the supervisor of the license section, identified a city payment authorization showing that the city had paid the $85.00 fee for the June 5, 1986 10 K Columbus Dispatch run. Although defendants concede that the Department of Recreation and Parks was reimbursed by the sponsoring newspaper, even if the Columbus Dispatch did reimburse the city, it did not pay the fee up front as required by the ordinance, which may provide some evidence of inconsistent enforcement.

The second instance is the procession of motor vehicles en route from Cincinnati and Dayton that used the Columbus streets on March 20, 1985 to protest the closing of all Ohio savings and loan institutions. Defendants allege that this procession was a motorcade, not a parade, because the procession was not in exclusive use of the streets. Plaintiffs allege that the city assigned 41 police officers, a police helicopter and a wrecker to the event. Of the total number of officers, 23 were assigned to specific intersections along the procession's route. If this allegation is true, we do not think that the fact that the procession was not in exclusive use of the streets provides

a viable distinction. The district court concluded as a matter of law that this event did not constitute a parade. We believe that this was error. It is a matter of fact whether or not the procession was treated like a parade and required similar traffic control measures. This dispute of fact cannot be resolved on a summary judgment motion.

The third event is the family farm protest movement march of March 20, 1985 that was originally scheduled as a sidewalk procession with an accompanying flat bed truck proceeding to the state capitol. The protesters spilled into the street and marched on the capitol building. The city first characterized this event as "a spontaneous march." It was not until the city's response to plaintiffs' cross motion for summary judgment filed August 20, 1987 that it first argued that the farm protest "constituted an illegal parade for which participants should be cited." Plaintiffs allege that the family farm protest movement was not cited for its failure to obtain a parade permit. If true, the fact that the family farm protest movement was not cited for its failure to obtain a parade permit and that "spontaneous marches" are allowed provides some evidence that the ordinance is discriminatorily applied.

Because of the factual disputes concerning these incidents as examples, we believe it was error for the district court to grant defendants' motion for summary judgment on the issue of discriminatory enforcement. A grant of summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P., Rule 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (disputes over facts which might affect the outcome of the suit under governing law preclude the entry of summary judgment). We believe these three examples indicate that disputed factual issues remain about whether the ordinance is being discriminatorily applied and the case should be remanded to the district court for a hearing regarding *all* of the allegations of unconstitutional enforcement.

## VII.

To conclude, the decision of the district court that Columbus Municipal Code § 2111 is constitutional on its face is hereby AFFIRMED. The decision of the district court to grant defendants' motion for summary judgment on the issue of constitutional enforcement is hereby REVERSED and the case is remanded to the district court for proceedings consistent with this opinion.