**NORTHEAST OHIO COALITION FOR THE HOMELESS, et al., Plaintiffs,**

**v.**

**CITY OF CLEVELAND, Defendant.**

No. 1:94CV2008.

United States District Court,
N.D. Ohio,
Eastern Division.

May 3, 1995.

Kevin F. O'Neill, American Civ. Liberties Union of Ohio Foundation, Raymond V. Vasvari, Cleveland, OH, for plaintiffs.

Sharon Sobol Jordon, Charles E. Hannan, Jr., City of Cleveland, Dept. of Law, Cleveland, OH, for defendant.

## MEMORANDUM AND ORDER

ALDRICH, District Judge.

The Northeast Ohio Coalition for the Homeless (the "Coalition"), Richard Clements, Fruit of Islam of Muhammad's Mosque No. 18 (the "Mosque"), and Steven D. Hill (collectively "plaintiffs") bring this action pursuant to 42 U.S.C. § 1983, 28 U.S.C. § 2201(a), and the Ohio Constitution, against the City of Cleveland. The complaint challenges the constitutionality of Cleveland's Codified Ordinances § 675.02(c)(3). This Court has jurisdiction over the federal question, and supplemental jurisdiction over the state constitutional claim. Both sides have moved for summary judgment. For the reasons discussed below, the plaintiffs' motion for summary judgment is granted and the defendant's motion is denied.

I.

The undisputed and material facts follow.

The Coalition is a non-profit organization whose asserted purpose is to address the needs of homeless citizens. To this end, it publishes *The Homeless Grapevine* to publicize the plight of the homeless and to solicit charitable contributions for the sustenance of homeless individuals. The homeless and destitute people who distribute the paper acquire their copies from the Coalition for $.10 each. They then offer them to passers-by on public sidewalks, for a suggested donation of $1.00. The distributors retain all funds they receive in this fashion.

The Mosque is a non-profit membership organization. Its members propagate the Nation of Islam's religious and political paper, *The Final Call*. Distributors sell, on city sidewalks, copies of the paper for $1.00 each; they retain $.30 of this amount, and remit the remainder to the Mosque. Because members of the Mosque are expected to donate an additional $50.00 a month to the Mosque, distributors earn only a subsistence living through distribution of the paper.

The City of Cleveland requires all "peddlers" to obtain a permit, which requires payment of a $50.00 fee in advance. The Coalition, most of its distributors, and most *Final Call* distributors are financially unable

to pay this fee. In fact, the Coalition will be unable to distribute its publication in Cleveland if the city continues to enforce the challenged ordinance. Richard Clements and Steven Hill, distributors of *The Homeless Grapevine* and *The Final Call*, respectively, have been arrested at least once for disseminating their respective publications without the required license. Hill, in fact, has been prosecuted several times for violation of the city's ordinance.

In 1989, the administrative cost of Cleveland's peddler registration system was $43.00, apparently per permit issued. These costs were allocated as follows:

| | |
|---|---|
| Application process: | $ 7.64 |
| Supervisory costs: | $26.74 |
| License issuance: | $ 2.25 |
| Miscellaneous Paper Costs: | $ .28 |
| Annual Field Maintenance: | $ 6.09 |
| TOTAL: | $43.00 |

The City offers no further explanation of the costs associated with its licensing system.

## II.

Federal Rule of Civil Procedure 56(c) governs summary judgment motions and provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law ...

█ Rule 56(e) specifies the materials properly submitted in connection with a motion for summary judgment:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein ... The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denial of the adverse party's

pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

However, the movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

█ In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *White v. Turfway Park Racing Assn., Inc.*, 909 F.2d 941, 943–44 (6th Cir.1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252, 106 S.Ct. at 2512.

## III.

Cleveland Codified Ordinances § 675.01(a)(2) provides:

> "Peddling" means selling, bartering, or offering or exposing for sale or barter any goods, wares, merchandise, menial tasks, such as painting numbers on curbs, food or beverages from, in, upon, along, or through the highways, streets, or sidewalks of the City, or in the open air or from a temporary shelter or vending device upon private property in the City.

The term "peddler" includes a "solicitor." C.C.O. § 675.01(a)(3). Section 675.02(a) prohibits the practice of peddling without a license. Section 675.02(c)(3) requires every person seeking to obtain a license to pay a $50.00 annual fee. The plaintiffs here challenge the imposition of this license under both the federal and Ohio constitutions. Each of these issues is addressed below.

■■■ A. Imposition of a flat license tax on the dissemination of religious literature in public by solicitors who seek a donation in return for the publication violates the first amendment as a prior restraint on protected speech. *Murdock v. Commonwealth of Pennsylvania,* 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292 (1943); and *Follett v. Town of McCormick, S.C.,* 321 U.S. 573, 64 S.Ct. 717, 88 L.Ed. 938 (1944). The charitable solicitation of funds in general is speech wholly within the scope of first amendment protection. *Village of Schaumburg v. Citizens For A Better Environment,* 444 U.S. 620, 632, 100 S.Ct. 826, 833, 63 L.Ed.2d 73 (1980). In reaching its conclusion, the *Murdock* court noted that "[t]he power to tax the exercise of a privilege is the power to control or suppress its enjoyment." *Murdock,* 319 U.S. at 112, 63 S.Ct. at 874. The Court distinguished a flat tax or license fee, imposed on the distribution of a publication, from "a nominal fee imposed as a regulatory measure to defray the expenses of policing the activities in question," and from a fee that is apportioned. *Id.,* at 113–114, 63 S.Ct. at 875.

■■ A fee limited to the expense incident to the administration of a regulatory provision and to the "maintenance of public order in the matter licensed" does not offend the first amendment where the regulatory provision itself is constitutional. *Cox v. State of New Hampshire,* 312 U.S. 569, 577, 61 S.Ct. 762, 766, 85 L.Ed. 1049 (1941). In *Cox,* the Supreme Court upheld a $300 permit fee applied to requests for permission to conduct a parade or march. The Court made clear that its decision turned on the power of the state to regulate its highways against the harms caused by spontaneous marches, and to defray the expense of that regulation. *Id.,* at 574–575, 61 S.Ct. at 765. The Court noted that the marchers were not charged for dis-

tributing leaflets, and expressly refused to consider whether their rights to disseminate written materials were implicated by the imposition of a fee for a parade permit. *Id.,* at 571–575, 61 S.Ct. at 764–765.

The Court recently considered its decisions in *Murdock* and *Follett* in the context of a generally applicable sales and use tax imposed on the distribution of religious materials by a religious organization. *Jimmy Swaggart Ministries v. Board of Equalization of California,* 493 U.S. 378, 110 S.Ct. 688, 107 L.Ed.2d 796 (1990). The Court there upheld against first amendment challenge a sales tax when imposed on the receipts from sales of religious materials. The Court reconciled this decision with *Murdock* and *Follett* in holding that those decisions invalidated only flat licensing taxes that operated as prior restraints. *Id.,* at 389, 110 S.Ct. at 695. Because the tax at issue in *Jimmy Swaggart Ministries* was not imposed at the time of registration, it did not constitute a prior restraint. *Id.,* at 390–391, 110 S.Ct. at 696. In addition, the tax was apportioned, unlike that at issue in *Murdock* and *Follett,* because it was tied to the realized receipts from the sales of the material in question. *Id.*

■ Most of the subsequent federal cases addressing the imposition of fees as a prerequisite to permission to distribute leaflets in public have held that such fees are invalid under *Murdock* and *Follett. See, e.g., Holy Spirit Association for the Unification of World Christianity v. Hodge,* 582 F.Supp. 592 (N.D.Tx.1984) (permit fee applied to solicitations of charitable contribution and posting of fidelity bond as prerequisite to registration of soliciting organization held unconstitutional); and *Gall v. Lawler,* 322 F.Supp. 1223 (E.D.Wisc.1971) (imposition of licensing fee on distribution of newspaper held invalid because, *inter alia,* it constitutes a prior restraint).

Cleveland points to several cases in which licensing fees were permitted in various contexts in support of the proposition that, so long as such fees are related to defraying the administrative expense associated with regulation, they are constitutionally permissible. Representative of these cases are *Jimmy*

*Swaggart Ministries; Bright Lights Inc. v. City of Newport,* 830 F.Supp. 378 (E.D.Ky. 1993); and *Center For Auto Safety, Inc. v. Athey,* 37 F.3d 139 (4th Cir.1994) None of these decisions is applicable to the facts before this Court.

As discussed above, *Jimmy Swaggart Ministries* approved a sales and use tax on the receipts from sales of religious literature. Unlike the fee imposed here and in *Murdock* and *Follett,* that tax did not constitute a prior restraint on expression and it was apportioned to the target's ability to pay. *Jimmy Swaggart Ministries* is simply inapposite here.

The court in *Bright Lights Inc.* upheld against first amendment challenge a tax imposed on bars at which nude dancing was performed. The court found that the license fee was incident to defraying the administrative costs of regulating the secondary effects of such establishments, such as the increase in prostitution and related crimes near the establishments in question.

 This tax is clearly distinguishable from the license fee here. Here, Cleveland does not maintain that its fee is directed to policing secondary effects of distribution of *The Homeless Grapevine* and *The Final Call.* Instead, Cleveland maintains that its fee is necessary to defray the expenses of the licensing provision itself. Cleveland's *Memorandum In Support of Motion For Summary Judgment,* at 5. This justification is wholly circular. That is, the challenged ordinance revolves around the mechanism requiring the collecting of a fee, and the city defends that mechanism as incident to defraying the costs of that same regulatory scheme. If this Court found the city's justification sufficient to survive first amendment scrutiny, *Murdock* and *Follett* would, in effect, be overruled. This is so because the *Murdock* and *Follett* decisions invalidated the process of imposing a flat fee in return for a license to disseminate material where that fee, *inter alia,* is a general revenue tax. Simply through the artifice of maintaining that the fee defrays the cost of collecting the fee, and is therefore not a general revenue tax but a fee necessary to defray the costs of regulation, the city would be permitted to circumvent the *Murdock* and *Follett* decisions. While the first amendment certainly countenances the imposition of nominal fees to defray the costs of permissible regulation of speech, it does not permit the avoidance of its command through the sort of bootstrapping Cleveland attempts here. Further distinguishing the *Bright Lights Inc.* case from that currently before this Court is the fact that the *Bright Lights Inc.* court did not address the prior restraint concerns that were central to the *Murdock* and *Follett* decisions.

The Fourth Circuit, in *Athey,* approved the imposition of a sliding-scale fee on organizations wishing to engage in charitable solicitation. *Athey,* 37 F.3d at 145. The size of the fee was based on the level of the organization's charitable contributions. The purpose of this fee was to defray the costs of a regulatory scheme aimed at the prevention of fraud by charitable organizations. *Id.* This case is inapposite to the dispute here for two reasons. First, the fee at issue in *Athey* was apportioned through its sliding-scale mechanism. This apportionment was central to the court's holding that the fee satisfied the requirements of *Murdock* and *Follett* as understood by the *Jimmy Swaggart Ministries* court. Second, the regulatory scheme, the costs of which the fee was directed toward defraying, was directed at combating a specific regulatory problem—the prevention of fraud—while that at issue here is not.

Cleveland also points to a recent Second Circuit decision in support of its position. *See National Awareness Foundation v. Abrams,* 50 F.3d 1159 (2nd Cir.1995)[1]. There, the court upheld imposition of a flat fee on charitable organizations that employed professional solicitors. However, the parties did not dispute the constitutionality of such a fee. *Id.,* at 1163–1164. Thus, the court did not address the question at issue here, but rather addressed the question whether such a fee, assuming its constitutionality, could be imposed not merely to defray administrative

---

1. The city actually points to the district court judgment the Second Circuit affirmed. At the time the briefs were filed in this case, the Second Circuit had not yet decided *Abrams.*

costs but also to defray the costs of enforcing the regulatory scheme pursuant to which the fee was imposed. In answering this question in the affirmative, the court did no more than reject the distinction between costs tied to the administration of a regulation and those tied to its enforcement. *Id.*, at 1165–1166. In any event, to the extent that the *Abrams* decision can be read to hold that the imposition of a fee to defray the costs merely of collecting the fee is constitutional, this Court rejects such a holding as contrary to *Murdock, Follett,* and *Jimmy Swaggart Ministries.*

■ Here, the ordinance in question imposes a $50 fee on all "peddlers" who seek to distribute literature in return for money. Cleveland does not dispute that the Coalition's and the Mosque's individual distributors are unable to afford the license fee, nor does the city dispute that the Coalition cannot afford to procure a license on behalf of all its distributors. In any event, the city does not challenge the plaintiffs' standing to attack the constitutionality of the ordinance on this ground even were all the plaintiffs able to afford the licensing fee.[2] Cleveland offers nothing to suggest that the fee defrays the expense of any regulatory system other than that imposing the fee itself. That is, the fee is justified as necessary to defray the cost of collecting the fee and issuing a permit after the fee is paid.

The ordinance is constitutionally infirm not only because it is not tied to the peddler's ability to pay—and thus serves to prevent at least some individuals, such as the Coalition and Richard Clements—from distributing their messages, but also because it is a prior restraint on speech. This prior restraint is not constitutionally permissible as a fee tied to defraying the expenses of administering a valid regulatory scheme, because the only regulation whose expenses it defrays is that requiring payment of the fee.

Therefore, there are no issues of material fact in dispute and the plaintiffs are entitled

to judgment in their favor as a matter of law on count one of their complaint.

B. Article I, § 11 of the Ohio constitution provides in pertinent part: "no law shall be passed to restrain or abridge the liberty of speech, or of the press." "[T]he free speech guarantees accorded by the Ohio Constitution are no broader than the First Amendment, and ... the First Amendment is the proper basis for interpretation of Section 11, Article I of the Ohio Constitution." *Eastwood Mall, Inc. v. Slanco,* 68 Ohio St.3d 221, 626 N.E.2d 59, 61 (1994). Thus, the foregoing analysis with respect to the first amendment is applicable with respect to the Ohio constitutional claim as well. *See, e.g., City of Bowling Green v. Lodico,* 11 Ohio St.2d 135, 228 N.E.2d 325 (1967) (invalidating, under federal and Ohio constitutions, ordinance requiring solicitor to obtain license for a fee before selling magazine on sidewalks, both because city official possessed unfettered discretion in issuing license and because imposition of fee constituted impermissible prior restraint).

Consequently, for the reasons discussed in section III.A. above, there are no disputed issues of material fact and the plaintiffs are entitled to judgment as a matter of law on count two of their complaint.

## IV.

This Court finds that no material facts remain in dispute and that the plaintiffs are entitled to judgment as a matter of law on both counts of their complaint. Accordingly, the plaintiffs' motion for summary judgment is granted and the defendant's motion for summary judgment is denied. This Court enters judgment in favor of the plaintiffs, declares that Cleveland Codified Ordinances § 675.02(c)(3) violates both the first amendment to the United States constitution and Article I, section 11 of the Ohio constitution, and permanently enjoins its enforcement.

Within ten days of the date of this order, the plaintiffs shall submit any motion for attorneys' fees, including all materials in sup-

---

**2.** A plaintiff whose first amendment rights are not violated by a particular provision may nonetheless challenge the law on overbreadth grounds "by showing that it substantially abridges the first amendment rights of other parties not before the court." *Village of Schaumburg v. Citizens For A Better Environment,* 444 U.S. 620, 634, 100 S.Ct. 826, 834, 63 L.Ed.2d 73 (1980).

port of such a motion. The city may respond within ten days of the plaintiffs' filing.

IT IS SO ORDERED.