NORTHEAST OHIO COALITION FOR
THE HOMELESS, et al.,
Plaintiffs–Appellees,

v.

CITY OF CLEVELAND, Defendant–
Appellant.

Nos. 95–3665, 95–4016.

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 23, 1996.

Decided Feb. 3, 1997.

Raymond V. Vasvari, Kevin F. O'Neill (argued and briefed), Cleveland–Marshall College of Law, Visiting Assistant Professor of Law, Cleveland, OH, for Plaintiffs–Appellees.

Charles E. Hannam, Jr. (argued and briefed), City of Cleveland Law Department, Office of Director of Law, Cleveland, OH, for Defendant–Appellant.

Before: NORRIS, SUHRHEINRICH, and BATCHELDER, Circuit Judges.

ALAN E. NORRIS, Circuit Judge.

In this consolidated appeal, defendant, the City of Cleveland, challenges the district court's order granting summary judgment to plaintiffs, the Northeast Ohio Coalition for the Homeless ("Coalition"), Richard Clements, Fruit of Islam of Muhammad's Mosque No. 18 ("Mosque"), and Steven D. Hill, and permanently enjoining the enforcement of a City of Cleveland ordinance requiring all peddlers to pay a license fee. The city also challenges the district court's subsequent order awarding attorney's fees to plaintiffs pursuant to 42 U.S.C. § 1988. For the following reasons, we reverse both of the district court's orders and remand with instructions to enter summary judgment in favor of the city.

## I.

Plaintiffs bring this action pursuant to 42 U.S.C. § 1983, he free speech provision of the Ohio Constitution, Ohio Const, art. I, § 11, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202. They challenge the constitutionality of a Cleveland ordinance regulating peddling on public property. The material facts of the case are not in dispute. Cleveland Codified Ordinance § 675.02(a) requires that every person who engages in peddling anywhere in the city be in possession of a peddler's license.[1] Section 675.02(c)(3) states that each applicant for such a license must pay an annual fee of fifty dollars to cover the expenses incident to processing the application and supervising the licensee. In return for the fee, each applicant receives the license itself, containing his name and address, a detailed description of the goods he is authorized to sell, and a license number and expiration date, as well as a laminated identification card containing his photograph. *See* § 675.03(a)-(b). Section 675.03(a) states that the peddler must wear the identification card and carry the license on his person whenever he is engaged in peddling. In 1989, the cost to the city of administering the licensing program was forty-three dollars per license issued.

The Coalition is a nonprofit organization dedicated to addressing the needs of homeless citizens. To publicize the plight of the homeless and to provide homeless individuals with a means for soliciting charitable contributions, the Coalition publishes a periodic newspaper called *The Homeless Grapevine*. The *Grapevine* is distributed exclusively by homeless and destitute individuals who obtain copies of the paper from the Coalition for ten cents each and then offer them to passers-by on public sidewalks for a suggested donation of one dollar. The distributors may retain all of the donations they receive.

The Mosque is a nonprofit membership organization affiliated with the Nation of Islam. Its members disseminate the Nation of Islam's religious and political beliefs by selling copies of a newspaper known as *The Final Call*. Members sell the newspapers on public sidewalks for one dollar per copy. Of the one dollar they collect for each copy of the paper, members retain thirty cents, remitting the remainder to the Mosque. In addition, members must donate fifty dollars a month to the Mosque. Plaintiffs Clements and Hill have been arrested in the past for distributing the *Grapevine* and *Final Call* without peddler's licenses.

On September 27, 1994, plaintiffs brought this action in the United States District Court for the Northern District of Ohio, challenging the license fee ordinance under both the United States and Ohio constitutions, and seeking declaratory and injunctive relief. Plaintiffs filed a motion for summary judgment, and the city filed a cross-motion for summary judgment. On May 3, 1995, the district court addressed the constitutionality of the § 675.02(c)(3) license fee requirement. Concluding that the city failed to adequately articulate a purpose for its peddlers' ordinance, the court characterized the license fee as a flat tax which serves only "to defray the expenses of the licensing provision itself." *Northeast Ohio Coalition for the Homeless v. City of Cleveland*, 885 F.Supp. 1029, 1033 (N.D.Ohio 1995). Relying upon *Murdock v. Pennsylvania*, 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292 (1943), and *Follett v. Town of McCormick, S.C.*, 321 U.S. 573, 64 S.Ct. 717, 88 L.Ed. 938 (1944), the court concluded that the fee constituted an impermissible prior restraint on speech under both the United States and Ohio constitutions. 885 F.Supp. at 1034. Accordingly, the district court granted plaintiffs' motion for summary judgment, denying the city's cross-motion for summary judgment and permanently enjoining the enforcement of § 675.02(c)(3).

On August 18, 1995, the district court awarded plaintiffs attorney's fees in the amount of $15,628. The city filed timely appeals from both orders.

---

1. The ordinance defines "peddling" broadly to include "selling, bartering, or offering or exposing for sale or barter any goods, wares, merchandise, menial tasks, such as painting numbers on curbs, food or beverages from, in, upon, along, or through the highways, streets, or sidewalks of the City, or in the open air or from a temporary shelter or vending device upon private property in the City." *See* § 675.01(a)(2).

## II.

■ The city contends that the fifty dollar license fee is a reasonable fee which serves to defray the expenses associated with administering an otherwise valid ordinance, and thus does not violate either the United States or Ohio constitutions. Since the facts of this case are not in dispute, we review the district court's grant of plaintiffs' motion for summary judgment and denial of the city's cross-motion for summary judgment de novo. *Pinney Dock & Transp. Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1472 (6th Cir.1988).

### A. First Amendment

It is well-settled that solicitations to pay or contribute money to charity involve a variety of speech interests and are generally entitled to protection under the First Amendment. *See Riley v. Nat'l Fed'n of the Blind of North Carolina, Inc.*, 487 U.S. 781, 788–89, 108 S.Ct. 2667, 2673–74, 101 L.Ed.2d 669 (1988); *Secretary of State of Maryland v. Joseph H. Munson Co.*, 467 U.S. 947, 959–60, 104 S.Ct. 2839, 2848–49, 81 L.Ed.2d 786 (1984); *Village of Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620, 632, 100 S.Ct. 826, 833–34, 63 L.Ed.2d 73 (1980). It is equally clear that while the government may not tax the exercise of constitutionally protected activities, it may restrict the exercise of such activities by "reasonable time, place, and manner regulations as long as the restrictions 'are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication.'" *United States v. Grace*, 461 U.S. 171, 177, 103 S.Ct. 1702, 1707, 75 L.Ed.2d 736 (1983) (quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45, 103 S.Ct. 948, 955, 74 L.Ed.2d 794 (1983)). The Supreme Court's decisions in *Cox v. New Hampshire*, 312 U.S. 569, 61 S.Ct. 762, 85 L.Ed. 1049 (1941), *Murdock v. Pennsylvania*, 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292 (1943), and *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 112 S.Ct. 2395, 120 L.Ed.2d 101 (1992), demonstrate these principles in the context of license fee requirements. In *Cox*, the Supreme Court considered the constitutionality of a state statute requiring marchers to ob-

tain licenses and to prepay fees of no more than three hundred dollars a day before they could parade on public streets. In upholding the validity of the state statute, the Supreme Court held that the license fee did not offend the marchers' First Amendment rights because it was not a revenue tax, but rather a means to defray the expenses incident to the administration of the statute, and to the maintenance of public order during licensed parades. 312 U.S. at 577, 61 S.Ct. at 766. In reaching its conclusion, the Court noted that "[t]here is no evidence that the statute has been administered otherwise than in the fair and non-discriminatory manner which the state court has construed it to require." *Id.*

In *Murdock*, decided two years after *Cox*, a religious group attacked the constitutionality of a city ordinance which required it to pay a flat license fee as a condition to conducting its distribution activities. The Supreme Court struck down the ordinance as unconstitutional because the license fee was essentially "a flat tax imposed on the exercise of a privilege granted by the Bill of Rights." *Murdock*, 319 U.S. at 113, 63 S.Ct. at 875. In referring to the ordinance, the Court stated:

> [T]he issuance of the permit or license is dependent on the payment of a license tax. And the tax is fixed in amount and unrelated to the scope of the activities of petitioners or to their realized revenues. It is not a nominal fee imposed as a regulatory measure to defray the expenses of policing the activities in question.

*Id.* at 113–14, 63 S.Ct. at 875. The Supreme Court distinguished the state statute it upheld in *Cox*, stating that unlike the statute in *Cox*, the ordinance challenged in *Murdock* was not a "state regulation of the streets to protect and insure the safety, comfort, or convenience of the public," and the license fee "[was] not a nominal one, imposed as a regulatory measure and calculated to defray the expenses of protecting those on the streets and at home against the abuses of solicitors." *Id.* at 116, 63 S.Ct. at 876.

■ The lesson to be gleaned from *Cox* and *Murdock* is that an ordinance requiring a person to pay a license or permit fee before

he can engage in a constitutionally protected activity does not violate the Constitution so long as the purpose of charging the fee is limited to defraying expenses incurred in furtherance of a legitimate state interest. In *Forsyth County,* 505 U.S. at 123, 112 S.Ct. at 2397–98, the Supreme Court appended an important limitation to a government's ability to recover such expenses. There, the Court found unconstitutional a city ordinance which required private groups to pay a license fee as a condition to engaging in demonstrations on public lands. The amount of the license fee was to be fixed by the county's Board of Commissioners "in order to meet the expense incident to the administration of the Ordinance and to the maintenance of public order in the matter licensed," but the fee was not to exceed one thousand dollars per day. *Id.* at 126–27, 112 S.Ct. at 2399–2400. The Court concluded that the ordinance was not content-neutral because "[t]he fee assessed will depend on the administrator's measure of the amount of hostility likely to be created by the speech based on its content." *Id.* at 134, 112 S.Ct. at 2403.

In the present case, the district court held that the peddlers' licensing ordinance constitutes an impermissible prior restraint on speech because the fifty dollar license fee is not "tied to defraying the expenses of administering a valid regulatory scheme, [given that] the only regulation whose expenses it defrays is that requiring payment of the fee." 885 F.Supp. at 1034. We are unable to agree with the court's characterization of the purpose underlying the ordinance and the license fee. This court has previously referred to the "compelling governmental interest in preventing fraudulent solicitations of the very individuals most disposed to contribute financial support in response to pleas for donations." *Dayton Area Visually Impaired Persons, Inc. v. Fisher,* 70 F.3d 1474, 1482 (6th Cir.1995), *cert. denied,* ——— U.S. ———, 116 S.Ct. 1421, 134 L.Ed.2d 545 (1996). In addition, the city has an interest in giving its citizens some assurance that it can identify and· pursue peddlers who do engage in fraudulent or unlawful conduct. This ordinance, by requiring street peddlers to register with the city and wear identification cards while they are engaged in peddling,

furthers the aforementioned interests, and the administrative costs incident to the implementation of an ordinance embodying compelling governmental interests are defrayed by the fee.

Plaintiffs argue that a license fee which serves to defray the expenses of administrating an ordinance that encroaches on First Amendment rights is permissible only if the fee is nominal in amount. They rely upon *Murdock,* 319 U.S. at 116, 63 S.Ct. at 876, for this proposition. We have previously addressed this precise issue in *Stonewall Union v. City of Columbus,* 931 F.2d 1130 (6th Cir.1991). In that case, we upheld a Columbus ordinance that required applicants for parade permits to pay an eighty-five dollar fee. We specifically held that a more than nominal permit fee is constitutionally permissible so long as the fee is "reasonably related to the expenses incident to the administration of the ordinance and to the maintenance of public safety and order." *Id.* at 1136. In the present case, the parties do not dispute that in 1989, the city's cost of administering the peddlers' licensing ordinance was forty-three dollars per permit. Moreover, there is no evidence that the fees were charged for any reason other than to defray the costs of administering the ordinance. Thus, the fifty dollar fee is neither unreasonable, nor excessive.

Like the regulations upheld in *Cox* and *Stonewall,* Cleveland's peddlers' ordinance and the license fee it imposes are narrowly tailored to further a legitimate governmental interest. The fee is reasonably related to the costs of administering the ordinance, and the licensing program helps to prevent fraud by solicitors. In addition, the program enables the city to offer some protection to individuals who donate money to street peddlers. Moreover, unlike the fee in *Forsyth County,* the fifty dollar license fee in this case is content-neutral—all peddlers must pay it regardless of the source and nature of the products they peddle. Accordingly, the city's fee does not unduly or impermissibly burden plaintiffs' First Amendment rights.

Consequently, we hold that the license fee imposed by Cleveland's peddlers' ordinance

is a constitutionally permissible time, place, and manner regulation of expressive conduct.

## B. *Ohio Constitution*

Article I, § 11 of the Ohio Constitution provides in part: "no law shall be passed to restrain or abridge the liberty of speech, or of the press." In *Eastwood Mall, Inc., v. Slanco*, 68 Ohio St.3d 221, 222, 626 N.E.2d 59, 61 (1994), the Ohio Supreme Court reiterated that the protections afforded by this clause extend no further than those provided under the First Amendment to the United States Constitution. Since the license fee required by Cleveland's peddlers' ordinance does not constitute an impermissible prior restraint of speech under the First Amendment to the United States Constitution, the ordinance does not run afoul of the Ohio Constitution.

Accordingly, the district court erred in granting plaintiffs' motion for summary judgment, and in permanently enjoining enforcement of the ordinance. Moreover, the district court erred in denying the city's cross-motion for summary judgment.

### III.

The city further argues that the district court erred in awarding plaintiffs attorney's fees under 42 U.S.C. § 1988. In view of our disposition of this appeal, plaintiffs are not "prevailing parties" as contemplated by § 1988; they are therefore not entitled to attorney's fees.

### IV.

For the reasons stated above, the district court's order granting summary judgment to plaintiffs, denying defendant's cross-motion for summary judgment, and permanently enjoining the enforcement of Cleveland Codified Ordinance § 675.02(c)(3) is **reversed**, and this case is **remanded** with instructions to enter summary judgment in favor of the city. Furthermore, the district court's order awarding plaintiffs attorney's fees under 42 U.S.C. § 1988 is **reversed**.