NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 17a0027n.06

Case No. 13-3474

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Jan 13, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| FRANK WAGNER, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON REMAND FROM THE |
| v. | ) | SUPREME COURT OF THE |
| | ) | UNITED STATES. |
| CITY OF GARFIELD HEIGHTS, OHIO; | ) | |
| WILLIAM WERVEY, | ) | |
| | ) | |
| Defendants-Appellants. | ) | |
| | ) | |

BEFORE: BOGGS, NORRIS, and WHITE, Circuit Judges.

PER CURIAM. In September 2011, Frank Wagner placed a sixteen-square-foot street-facing political sign on the lawn of his Garfield Heights, Ohio, home. Wagner promptly received a letter from the City of Garfield Heights, informing him that his sign exceeded a six-square-foot limit for "political" lawn signs established by municipal ordinance and raising the prospect of legal action against him. Wagner responded by filing suit in federal court. Wagner alleged a First Amendment violation and sought to enjoin Garfield Heights from enforcing its allegedly unconstitutional ordinance. The district court enjoined Garfield Heights from enforcing that particular section, but did not grant any other relief. We reversed, holding that Garfield Heights's limitation on the size of political signs survived the intermediate scrutiny applicable to content-neutral regulations. Soon after our ruling, however, the Supreme Court issued a decision

in *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015), and vacated our judgment in light of its opinion. On remand, Wagner argues that this new authority requires us to subject Garfield Heights's sign restrictions to strict scrutiny. We hold that it is subject to strict scrutiny—a stringent standard that Garfield Heights cannot meet—and affirm the decision of the district court to award Wagner an injunction.

I

A

The City of Garfield Heights is a largely residential suburb of Cleveland, Ohio. Just as many such municipalities throughout the nation, Garfield Heights seeks to ensure that its neighborhoods are "aesthetically harmonious" and endeavors to promote the safety of "the motoring public [and] pedestrians." Garfield Heights, Ohio, Code § 1140.01(c)–(d). To this end, the City has enacted Garfield Heights Codified Ordinances Chapter 1140, a comprehensive code of regulations that governs whether, when, and for how long its residents, businesses, and visitors may post signs. These regulations generally prohibit signs in residential areas. *Id.* § 1140.361. But given that Garfield Heights acknowledges "the rights of [its] residents" to "speak freely," *id.* § 1140.01, Sections 1140.04(f) and 1140.361 of the Codified Ordinances allow residents to place "temporary signs" measuring less than twelve square feet in surface area on their lawns. *See id.* §§ 1140.04(f), 1140.361.[1] For example, Chapter 1140 would seem to allow a resident to erect a temporary lawn sign of up to twelve square feet advertising a lemonade stand, an Avon party, or the opening of an in-home daycare. *See id.* §§ 1140.04(f), 1140.361.

---

[1] We note that two different versions of Section 1140.361 appear in the record. (Compare R. 5, PgID 33, 73 ("No signs shall be permitted in any residence district . . . except the signs exempted from the permit requirements of this chapter by Section 1140.04.") (emphasis added), with R. 7, PgID 133; R. 49-2, PgID 1463 ("No signs shall be permitted in any residence district . . . except the signs exempted from the permit requirements of this chapter by Section 1140.03(g).") (emphasis added).) Since there is, in fact, no Section 1140.03(g), and since the parties seem to agree that the former version is the correct version, we accept that this is so.

But "for-sale signs, sold signs, open house, for-rent, and leasing signs, and signs of a religious, holiday, personal or political nature" are subject to additional, more restrictive rules. *Id.* § 1140.361. Under Section 1140.361, only one "for-sale, sold, for-rent, leasing, open house, religious, holiday or personal sign" not exceeding six square feet is permitted on a given lot in single-family residential districts. *Ibid.* Section 1140.362 extends this six-square-foot limit to political signs and goes even further by providing that the limitation applies to all political signs throughout Garfield Heights, including those in commercial and industrial districts. *Id.* § 1140.362. By contrast, "religious," "holiday," "personal," and other non-political temporary signs in commercial and industrial districts can generally be as large as twelve square feet in sign area without a permit, *id.* § 1140.04(f), and up to thirty-two square feet with a permit, *id.* § 1140.37(e).

Despite being subject to more restrictive size constraints in non-residential areas, in residential areas, political signs are subject to fewer overall restrictions than "for-sale, sold, for-rent, leasing, open house, religious, holiday [and] personal" signs. Whereas residents must remove these other signs within forty-eight hours after the signs "fulfil[l] [their] purpose," *id.* § 1140.361, residents may leave political signs up for up to seventy-two hours after an election, *id.* § 1140.99. Additionally, despite some language in the City's ordinances to the contrary, *see id.* § 1140.29(a), Garfield Heights maintains that whereas residents may post only one "for sale, sold, for-rent, leasing, open house, religious, holiday or personal" sign on their property, they may erect as many political lawn signs as they want until they run up against a regulation that restricts the "total sign face area of all temporary signs on a lot" to 0.675 square feet per foot of frontage. *See* Appellants' Br. 9 (citing Garfield Heights, Ohio, Code § 1140.362); *see also* Garfield Heights, Ohio, Code §§ 1140.361, 1140.04(f), 1140.37(e), 1140.27(a). Thus, a Garfield

Heights resident with fifty feet of frontage could presumably post any number of political lawn signs so long as their total sign face area does not exceed 33.75 square feet. *See* Garfield Heights, Ohio, Code §§ 1140.361, 1140.04(f), 1140.37(e), 1140.27(a).

B

Frank Wagner is a Garfield Heights, Ohio, resident who opposed former councilwoman Tracy Mahoney's position on traffic cameras in Garfield Heights, as well as her plan to introduce a municipal tax on waste disposal. In September 2011, Wagner's opposition to Mahoney's politics apparently spurred him to place a sixteen-square-foot sign on his lawn opposing Mahoney's reelection bid. Wagner's sign read: "*You do the math*[:] Traffic Camera[s] + Rubbish Tax = Mahoney Baloney." An apparently unamused Mahoney learned about Wagner's sign and called Mayor Vic Collova and Building Commissioner William Wervey to complain. Mayor Collova, who had also fielded a complaint about Wagner's sign from another area resident, drove by Wagner's house and concluded that the sign "was obviously larger in size than the" six-square-foot size restriction applicable to political yard signs set forth in Section 1140.362 of the Garfield Heights Codified Ordinances. *See* Garfield Heights, Ohio, Code § 1140.362. Wervey followed up by visiting Wagner's house two days later, but upon seeing that Wagner had taken his sign down, advised Mayor Collova that Wagner was in compliance with the City's sign regulations.

Later that week, however, Mahoney contacted Mayor Collova again to let him know that Wagner had put the sign back up. This time, Mahoney "specifically requested" that Garfield Heights enforce Section 1140.362, the City's six-square-foot limit to political signs, against Wagner. Mayor Collova agreed and instructed Wervey to send Wagner a letter requesting that he comply with the City's sign regulations. Wervey then drafted and sent a letter asking Wagner

to "remove the sign in your front yard or reduce [its] size to conform" to Section 1140.362. The letter nowhere mentioned the generally applicable twelve-square-foot limit set forth in Sections 1140.04(f) and 1140.361. The letter concluded with a warning, informing Wagner that if his political sign was not removed by September 23, 2011, the City of Garfield Heights would "have no choice but to proceed with legal action in" state court, where Wagner would face up to $1,000 in fines for each day of noncompliance with Section 1140.362. *See* Garfield Heights, Ohio, Code § 1140.99.

## C

Upon receiving and reading the letter, Wagner filed an action against Wervey and Garfield Heights in federal court, seeking a declaratory judgment that, whether facially or as applied to him, Section 1140.362—the ordinance governing the size of political signs—was an impermissible content-based restriction on speech that violated the United States and Ohio Constitutions. Wagner also sought to enjoin Wervey and Garfield Heights from enforcing the ordinance. The defendants responded by filing a counterclaim for a declaratory judgment that Garfield Heights's ordinances regulating political signs were constitutional. After taking discovery, both sides moved for summary judgment on their respective claims.

The district court entertained Wagner's facial challenge and ruled in his favor. The court began by identifying the various ways in which Garfield Heights's ordinances distinguish between "political" and other yard signs and concluded that because Section 1140.362 "singles out political signs for different treatment than all other signs," that part of the Codified Ordinances is a content-based restriction on speech subject to strict scrutiny. The district court then determined that because neither of the governmental interests that Wervey and Garfield Heights advanced in defense of the ordinances—namely, aesthetics and traffic safety—were

compelling, and because the statute was in any event not narrowly tailored to achieve either of those goals, Section 1140.362 violates the protections for freedom of speech set forth in the First Amendment to the federal Constitution. The court determined that Section 1140.362 was severable from the remainder of Chapter 1140's regulations and permanently enjoined Garfield Heights from enforcing it.

The defendants appealed and we reversed. *See Wagner v. City of Garfield Heights*, 577 F. App'x 488, 500 (6th Cir. 2014). We held that although the district court was correct that "the City must determine whether a sign is political or not" before determining how to regulate, the district court erred by applying an "absolutist" test for content-based discrimination. *Id.* at 493. Citing our earlier decision in *H.D.V.-Greektown, LLC v. City of Detroit*, 568 F.3d 609 (6th Cir. 2009), we explained that "context matter[s] when a court assesses content neutrality." *Id.* at 495. Relying on the parties' representations—which omitted any reference to the understanding that Chapter 1140 would allow some temporary residential yard signs, such as those that advertise on-site commercial activity, to extend up to twelve square feet in area—we observed that in the context of Garfield Heights's residential districts, "political signs are subject to no greater restrictions than are non-political signs," and "non-political [signs]" are actually "subject to more restrictive regulation" than political signs. *Id.* at 496. Because this context did not suggest that Garfield Heights had singled out political signs in an effort to suppress political speech, we applied intermediate scrutiny and upheld the six-square-foot size restriction on political signs as an acceptable way of accomplishing the City's legitimate aesthetic and traffic-safety goals. *Id.* at 498–500.

Wagner filed a petition for a writ of certiorari in the Supreme Court. While Wagner's petition was pending, the Supreme Court issued a decision in *Reed v. Town of Gilbert*, 135 S. Ct.

2218 (2015). In *Reed*, an Arizona pastor challenged a local sign regulation that effectively prevented his church from posting temporary signs directing people to church services. *Id.* at 2225–26. The pastor argued that because the relevant regulations treated signs intended to direct people to "religious, charitable, community service, educational or other similar non-profit" events less favorably than other signs, such as "political signs" and "ideological signs," the regulation was a content-based restriction on speech and strict scrutiny thus applied. *Id.* at 2224–25. Even though the context did not suggest that the municipality intended to suppress speech related to non-profit events, *see Reed v. Town of Gilbert*, 707 F.3d 1057, 1069–72 (9th Cir. 2013), the Supreme Court agreed with the pastor, explaining that "[a] law that is content based on its face is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of 'animus toward the ideas contained' in the regulated speech," *Reed*, 135 S. Ct. at 2228 (quoting *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 429 (1993)).

In light of its holding in *Reed*, the Supreme Court granted Wagner's petition, vacated our judgment, and remanded Wagner's action to us for further consideration. *See Wagner v. City of Garfield Heights*, 135 S. Ct. 2888, 2888 (2015) (mem.).

II

A

It appears that our embrace of a context-dependent inquiry into the content neutrality of Section 1140.362 may be inconsistent with *Reed*. In particular, our holding that the fact that a regulatory scheme requires a municipality to "examine the content of a sign to determine which ordinance to apply 'should merely be seen as indicative, not determinative, of whether a government has regulated for reasons related to content'" appears to run afoul of *Reed*'s central

teaching. *Wagner*, 577 F. App'x at 494 (quoting *Brown v. Town of Cary*, 706 F.3d 294, 302 (4th Cir. 2013)); *see Reed*, 135 S. Ct. at 2228. Accordingly, in light of the Supreme Court's remand, we asked the defendants and Wagner to submit briefs concerning the impact of *Reed* on our previous decision in *Wagner*.

The defendants responded by arguing that Wagner lacks standing to litigate this case because we cannot redress the injury that he asserts. *See* Appellants' July 31, 2015, Letter Br. 9–12; Appellants' Oct. 15, 2015, Letter Br. 3–4. Wagner, for his part, argues that the distinction between political and other signs in the City's ordinances means that the law is subject to strict scrutiny and must be invalidated for the reasons given by the district court. Appellee's July 31, 2015, Letter Br. 2–12. We evaluate each of these arguments de novo. *See Fieger v. Mich. Supreme Court*, 553 F.3d 955, 961 (6th Cir. 2009); *Ne. Ohio Coal. for the Homeless v. City of Cleveland*, 105 F.3d 1107, 1109 (6th Cir. 1997).

B

Because "[s]tanding is the 'threshold question in every federal case,'" *Grendell v. Ohio Supreme Court*, 252 F.3d 828, 832 (6th Cir. 2011) (quoting *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 494 (6th Cir. 1999)), we begin with the defendants' contention that Wagner lacks standing, and that we thus lack jurisdiction in this dispute. It is well established that federal courts have the power to adjudicate only "cases" and "controversies." U.S. Const. art. III, § 2, cl. 1. That jurisdictional limitation requires this court to ensure that the parties before it have "standing," which is loosely defined as a sufficiently strong "personal stake in the outcome" of a particular controversy to "justify exercise of the court's remedial powers on [a litigant's] behalf." *Warth v. Seldin*, 422 U.S. 490, 498–99 (1975) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)).

A plaintiff establishes Article III standing by demonstrating (1) that he has "suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not conjectural or hypothetical,'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)); (2) that a causal link exists "between the injury and the conduct complained of," *ibid.*, that is, the injury can fairly be trace "to the challenged action of the defendant," *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41 (1976); and (3) that it is "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision,'" *Lujan*, 504 U.S. at 561 (quoting *Simon*, 426 U.S. at 38, 43).  A plaintiff must establish all three components to satisfy the standing requirement, *ibid.*, which applies with equal force to plaintiffs making First Amendment overbreadth challenges, *see Fieger*, 553 F.3d at 961.  In this case, the defendants argue that Wagner cannot establish the third standing component of "redressability." Appellants' July 31, 2015, Letter Br. 9; Appellants' Oct. 15, 2015, Letter Br. 3–4.

C

The defendants argue that Wagner lacks standing because his sign, measuring sixteen square feet, would be prohibited under a *different* ordinance even if the challenged political-sign ordinance was struck down as unconstitutional.[2]  We need not evaluate the applicability of this separate ordinance, raised only after years of contentious litigation we might add, because even if it would otherwise prohibit Wagner's sign, it has no bearing on his entitlement to the injunctive relief he seeks.  Wagner did not request an order permitting the posting of his sixteen-square-foot sign.  Rather, faced with a letter from Garfield Heights threatening legal action based on the

---

[2] The defendants point to language in Section 1140.361, which exempts from prohibition any category of signs listed in Section 1140.04.  That section, in turn, explicitly mentions "[t]emporary signs measuring *less than* twelve (12) square feet in sign face area, provided that such signs otherwise comply with" several requirements not immediately relevant here.  Garfield Heights, Ohio, Code § 1140.04 (emphasis added).  Because Wagner's sign exceeds twelve square feet, the defendants argue, this provision would prohibit his sign regardless of the political-sign ordinance.

political-sign ordinance in Section 1140.362—and only that ordinance—Wagner sought an injunction against the enforcement of that specific provision. The district court, in turn, did not order that Wagner's sign be permitted, just that Garfield Heights be prohibited "from enforcing Section 1140.362 of the Ordinance." This injury—the threatened enforcement of Section 1140.362—is what Wagner seeks to redress, and it remains unaffected by the ability of Garfield Heights to employ a different ordinance to achieve its desired outcome.

The Court's decision in *Larson v. Valente*, 456 U.S. 228 (1982) is illustrative on this point. *Larson* involved a challenge to a Minnesota statute that set registration and reporting requirements for charities soliciting funds from the public, and also imposed restrictions on the organizations' expenditures. *Id.* at 230–31. As originally enacted, all "religious organizations" were exempt. *Ibid.* In 1978, however, the state revised the statute to limit the exemption to religious organizations that received more than half of their total contributions from their members. *Id.* at 231–32. Shortly thereafter, state officials notified Holy Spirit Association for the Unification of World Christianity (the Church) that it would have to register because it did not satisfy the fifty-percent rule for exemptions. *Ibid.* The church and several of its members sued, alleging, *inter alia*, that the fifty-percent rule "constituted an abridgment of their First Amendment rights of expression and free exercise of religion." *Id.* at 232–34. The defendants contended there was no standing, arguing that the Church would still be subject to the registration and reporting requirements, irrespective of the challenged fifty-percent rule, because the Church had not shown it was a religious organization within the meaning of the exemption. *Id.* at 235. The Court disagreed, explaining that:

> [t]his litigation began after the State attempted to compel the Church to register and report under the Act *solely on the authority of [the] fifty per cent rule*. If that rule is declared unconstitutional, as appellees have requested, then the Church cannot be required to register and report under the Act *by virtue of that rule*.

> Since that rule was the sole basis for the State's attempt to compel registration that gave rise to the present suit, a discrete injury of which appellees complain will indeed be completely redressed by a favorable decision of this Court.

*Id.* at 242–43 (emphasis added). The attempted use of the rule "as the State's instrument of compulsion necessarily g[ave] [the Church] standing to challenge the constitutional validity of the rule." *Id.* at 241.

Here, as in *Larson*, Wagner engaged in activity he alleges is protected by the First Amendment, and government officials sought to curtail that activity. Just as in *Larson*, the government officials could have acted pursuant to two separate statutory provisions: Sections 1140.361 plus 1140.04 (the twelve-square-foot limit on all signs in residential areas) or Section 1140.362 (the six-square-foot limit on political signs). Garfield Heights chose the latter, and specifically highlighted that provision as the sole basis for its threatened legal action against Wagner. Thus, as in *Larson*, the attempted use of Section 1140.362 "as the State's instrument of compulsion necessarily gives [Wagner] standing to challenge the constitutional validity of the rule." *Ibid.* Wagner "may indeed" be barred from erecting his sixteen-square-foot sign by Sections 1140.04(f) and 1140.361, but that fact "does not deprive this [c]ourt of jurisdiction to hear the present case." *Id.* at 242.

Our opinion in *Midwest Media Prop., L.L.C. v. Symmes Twp.*, 503 F.3d 456 (6th Cir. 2007), relied upon by the defendants in their letter brief, is inapposite. That case dealt with the denial of permit applications, *id.* at 459–60, not an injunction against an enforcement action. There, the plaintiff sought damages and an injunction requiring the township to permit them to erect the proposed signs. *Ibid.* Both of those remedies were contingent upon the theory that the permit denial itself was the injury. Thus, the fact that the township could have used an alternative provision to deny the requested permits properly deprived the plaintiff of standing, as

the court could not redress the plaintiff's injury even if the challenged provision was unconstitutional. Here, however, Wagner does not seek an injunction to permit his sign, but an injunction against the enforcement of the specific provision Garfield Heights sought to use to prohibit his sign. Unlike the injury alleged in *Midwest Media*, Wagner's injury is unaffected by the availability of alternative mechanisms of enforcement. Thus, we conclude that Wagner has a redressable injury that gives rise to standing in this case, and we may proceed to the merits of his claim.

### III

On the merits, our task is fairly simple: does *Reed* require us to apply strict scrutiny, and, if so, can the Garfield Heights regulation survive this heightened standard of review. *Reed* explains that "[g]overnment regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." 135 S. Ct. at 2227 (citation omitted). Thus, whether the regulation involves "defining regulated speech by particular subject matter . . . [or] by its function or purpose" is ultimately irrelevant. *Ibid.* "Both are distinctions drawn based on the message a speaker conveys, and, therefore, are subject to strict scrutiny." *Ibid.* The Garfield Heights regulation in this case, Section 1140.362, applies explicitly and exclusively to political signs. Thus it "applies to particular speech because of the topic discussed," and *Reed* commands that it be subject to strict scrutiny. *Ibid.* On remand, the defendants do not contest this point. *See* Appellants' July 31, 2015 Letter Br. at 12.

They do argue, however, that the disputed regulation can nonetheless survive strict scrutiny. *Id.* at 12–14. This "requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." *Reed*, 135 S. Ct. at 2231. Garfield Heights contends that Section 1140.362, just as the contested regulation in *Reed*,

advances compelling government interests of aesthetic appeal and traffic safety. We will follow the Court's example in *Reed* and assume without deciding that these interests are sufficiently compelling. *See Reed*, 135 S. Ct. at 2231.

Even so, Section 1140.362 succumbs to strict scrutiny for the same reason as the contested regulation in *Reed*: it is "hopelessly underinclusive." *Ibid.* In *Reed*, the Court noted that the town placed "strict limits on temporary directional signs . . . while at the same time allowing unlimited numbers of other types of signs that [diminish aesthetic appeal]." *Ibid.* Here, Garfield Heights expressly limits political signs to six square feet, but permits other kinds of temporary signs to be twice that size. *See supra* Part I.A. They offer no rationale for why political signs, as opposed to a signs advertising local businesses, mar the city's aesthetic appeal in such a way as to merit an arbitrarily smaller size restriction. The appellants' reference to the analysis in our vacated opinion, *see* Appellants' July 31, 2015 Letter Br. at 13, is unavailing. The fact that we concluded that Section 1140.362 could survive the tailoring requirement associated with intermediate scrutiny has no bearing on our tailoring analysis on remand because, as we noted then, "[i]ntermediate scrutiny's tailoring requirement differs importantly from the more rigorous tailoring mandated by strict scrutiny." *Wagner*, 577 F. App'x at 498. Garfield Heights "similarly has not shown that limiting temporary [political] signs is necessary to eliminate threats to traffic safety, but that limiting other types of signs is not." *Reed*, 135 S. Ct. at 2232. Because Section 1140.362 is not narrowly tailored to further the city's interest in promoting aesthetic appeal and traffic safety, it thus fails strict scrutiny.

IV

For the foregoing reasons, we hold that the ordinance is unconstitutional as it relates to political residential signs. We thus AFFIRM the judgment of the district court and uphold the injunction against Garfield Heights prohibiting the city from enforcing Section 1140.362.