RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0294p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

INTERNATIONAL OUTDOOR, INC.,

*Plaintiff-Appellant*,

v.

Nos. 19-1151/1399

CITY OF TROY, MICHIGAN,

*Defendant-Appellee*.

─────────────────

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:17-cv-10335—George Caram Steeh III, District Judge.

Argued:  October 16, 2019

Decided and Filed:  September 4, 2020

Before:  BOGGS, SUHRHEINRICH, and WHITE, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:**  J. Adam Behrendt, BODMAN PLC, Troy, Michigan, for Appellant.  Allan T. Motzny, CITY ATTORNEY'S OFFICE, Troy, Michigan, for Appellee.  **ON BRIEF:**  J. Adam Behrendt, Serena G. Rabie, BODMAN PLC, Troy, Michigan, for Appellant.  Allan T. Motzny, Lori Grigg Bluhm, CITY ATTORNEY'S OFFICE, Troy, Michigan, for Appellee.

BOGGS, J., delivered the opinion of the court in which WHITE, J., joined, and SUHRHEINRICH, J., joined in part.  SUHRHEINRICH, J. (pg. 24), delivered a separate opinion concurring in part and dissenting in part.

———————————

**OPINION**

———————————

BOGGS, Circuit Judge.  International Outdoor, Inc. ("International Outdoor") sought to erect billboards in the City of Troy, Michigan.  After the City of Troy denied International Outdoor's application for a permit and then for a variance from the limitations imposed by the City's sign ordinance, International Outdoor brought suit challenging the constitutionality of the City's ordinance under 42 U.S.C. § 1983 and alleging that the sign ordinance violated International Outdoor's First Amendment rights.

For the reasons stated below, we affirm the district court's grant of the City of Troy's motion for summary judgment on International Outdoor's claim that the City's sign ordinance constitutes an unconstitutional prior restraint.  However, we vacate the district court's grant of the City of Troy's motion to dismiss International Outdoor's claim that the City's sign ordinance imposes content-based restrictions without a compelling government interest, and we remand for reconsideration under the *Reed* standard.  We also vacate and remand the district court's denial of International Outdoor's motion for attorney's fees, pending reconsideration of the City of Troy's motion to dismiss.

I

International Outdoor is an outdoor advertising company that erects billboards throughout Southeast Michigan on properties it either leases or owns.  It earns revenue by charging advertisers for displaying their messages on its billboards.  In September 2015, International Outdoor sought to erect two digital billboards in two separate locations within the City of Troy. The billboards came under the definition of a "ground sign" pursuant to Section 85.01.03 of the City of Troy Sign Ordinance.

Under Section 85.02.05.C.5 of the Sign Ordinance, each property was allowed one ground sign not exceeding 12 feet in height with a maximum area of 100 square feet, if set back at least 10 feet from the right of way, and one additional ground sign subject to the following requirements:

1. The sign is set back a minimum of 200 feet from any street right of way.

2. The sign is located at least 1,000 feet from any sign exceeding 100 square feet.

3. The sign does not exceed 300 square feet.

4. The sign does not exceed 25 feet in height.

International Outdoor sought to erect in two locations a two-sided billboard that would be 14 feet by 48 feet (672 square feet per side for a total of 1,344 square feet area) and 70 feet in height when mounted. Both locations were less than 200 feet from a right of way and less than 1,000 feet from other signs exceeding 100 square feet. Because the proposed billboards exceeded the Sign Ordinance's size and height limitations as well as its setback requirements based on the zoning classification of the properties, the City denied International Outdoor's application for a permit. International Outdoor applied for variances. The variance application was presented to the City's Building Code Board of Appeals on November 4, 2015 and was considered at a special meeting and public hearing on November 18, 2015. The Board denied the application on November 20, 2015 for failure to meet the criteria set forth in Section 85.01.08.B.1 of the Sign Ordinance, which were a necessary but not a sufficient condition for grant of a variance:

a. The variance would not be contrary to the public interest or general purpose and intent of this Chapter; and

b. The variance does not adversely affect properties in the immediate vicinity of the proposed sign; and

c. The petitioner has a hardship or practical difficulty resulting from the unusual characteristics of the property that precludes reasonable use of the property.

International Outdoor filed an appeal of the Board's decision in the Oakland County Circuit Court, but on July 11, 2016 the appeal was dismissed as abandoned due to appellant's failure to file a brief. On February 2, 2017 International Outdoor filed a complaint in the Eastern District of Michigan under 42 U.S.C. § 1983, seeking declaratory and injunctive relief as well as damages and alleging that the City of Troy Sign Ordinance violated its First Amendment rights. Count I alleged that the Ordinance constituted an unconstitutional prior restraint because it lacked narrow, objective, and definite standards to guide the decision of the City of Troy's Building Code Board of Appeals in issuing variances and thus granted the Board unfettered discretion. Count II alleged that the Ordinance contained unconstitutional content-based

restrictions as it exempted from permit requirements certain categories of signs, such as flags and "temporary signs," which "include but are not limited to" various real estate signs, "garage, estate or yard sale" signs, "non-commercial signs[,]" "[p]olitical signs[,]" "holiday or other seasonal signs[,]" and "construction[s] signs . . . ." The City of Troy moved to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

The district court denied the City of Troy's motion as to Count I, holding that International Outdoor had stated a cognizable claim that the City's variance process was an unconstitutional prior restraint. The district court also rejected the City's argument of severability because the Sign Ordinance on the record did not contain a severability clause and the district court found that the variance procedure could not be severed under state law. The district court dismissed Count II because it determined that the speech at issue was commercial speech and therefore its regulation was not subject to strict scrutiny. Applying *Central Hudson Gas & Electric Corp. v. Public Service Commission*, 447 U.S. 557, 563 (1980), the district court found that the ordinance provisions satisfied an intermediate level of scrutiny.

The City of Troy moved for reconsideration of the district court's order denying its motion to dismiss as to Count I. That motion was denied.

At the conclusion of discovery, on September 20, 2018, International Outdoor moved for summary judgment. Four days later, on September 24, 2018, the City of Troy amended its Sign Ordinance ("Amended Ordinance"), with changes effective as of October 4, 2018. The Amended Ordinance rendered the challenges to the variance provisions stated in Count I inapplicable by removing content-based restrictions, clarifying the standards for issuance of a variance, and making issuance of a variance mandatory if specific criteria are met. The Amended Ordinance also prohibited off-premise signs carrying commercial messages, limited ground signs to 100 square feet in size and 20 feet in height, and provided that no variance would be granted for signs exceeding the size and height limitations by more than twenty-five percent.

Then, on October 22, 2018, the City of Troy submitted a response to International Outdoor's motion for summary judgment and, on October 31, 2018, filed a cross-motion for summary judgment, arguing in part that its amendment of the Sign Ordinance rendered

International Outdoor's remaining claims moot.  The City of Troy alleged that both the Sign Ordinance and the Amended Ordinance contained a severability provision, and that International Outdoor attached to its complaint a version of the Sign Ordinance that was posted on the City's website, while the official version of the ordinance—the one that contained severability and other unposted provisions—was available from the City of Troy's Clerk upon request.  The City of Troy explained its decision not to post a complete version of the ordinance online as an effort to avoid "confusion and an unwieldly document" with "hundreds of these recitations."

On January 18, 2019, the district court denied International Outdoor's motion for summary judgment and granted the City of Troy's cross-motion for summary judgment on the only remaining count, Count I, prior restraint.  The district court found that under the Amended Ordinance, International Outdoor's large off-premises advertising signs would neither qualify for a permit nor for a variance, thus rendering moot its injunctive and declaratory relief claims, but not its damage claim, which apparently would be only for damages until October 4, 2018, the effective date of the amendment.  However, the district court found that the severability of the variance provisions precluded Plaintiff's damage claim for past injury, and it granted summary judgment for the City of Troy.

International Outdoor then filed a motion for attorney's fees as a prevailing party under 42 U.S.C. § 1988, claiming that it had established that the City of Troy's variance process was an unconstitutional prior restraint.  The district court ruled that International Outdoor was not a prevailing party as it had failed to obtain court-ordered relief, and it denied the motion.  Subsequently, International Outdoor appealed the dismissal of Count II, the summary judgment as to Count I, and the denial of attorney's fees.  These appeals were consolidated.

II

International Outdoor now appeals the district court's grant of the City of Troy's motion for summary judgment on a claim that the City of Troy's sign ordinance imposes an unconstitutional prior restraint.

The court reviews *de novo* the district court's grant of summary judgment, applying the same standards as the district court.  *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 629 (6th

Cir. 2014). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding whether summary judgment is appropriate, the court views the "evidence in the light most favorable to the nonmoving party." *Himmel v. Ford Motor Co.*, 342 F.3d 593, 598 (6th Cir. 2003) (internal quotation marks and citations omitted). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

The First Amendment, applicable to states through the Fourteenth Amendment, protects freedom of speech from laws that would abridge it. "A prior restraint is any law 'forbidding certain communications when issued in advance of the time that such communications are to occur.'" *McGlone v. Bell*, 681 F.3d 718, 733 (6th Cir. 2012) (quoting *Alexander v. United States*, 509 U.S. 544, 550 (1993)). "Prior restraints are presumptively invalid because of the risk of censorship associated with the vesting of unbridled discretion in government officials and the risk of indefinitely suppressing permissible speech when a licensing law fails to provide for the prompt issuance of a license." *Bronco's Ent., Ltd. v. Charter Twp. of Van Buren*, 421 F.3d 440, 444 (6th Cir. 2005) (citation and internal quotation marks omitted).

To be constitutional, a prior restraint must be content-neutral, narrowly tailored to serve a significant governmental interest, and leave open ample alternatives for communication. *Forsyth Cty. v. Nationalist Movement*, 505 U.S. 123, 130 (1992). It must also not delegate overly broad licensing discretion to official decision-makers: "[i]f the permit scheme involves appraisal of facts, the exercise of judgment, and the formation of an opinion by the licensing authority, the danger of censorship and of abridgment of our precious First Amendment freedoms is too great to be permitted." *Id.* at 131 (internal quotation marks and citations omitted). Furthermore, the "decision whether or not to grant" a permit "must be made within a specified, brief period, and the status quo must be preserved pending a final judicial determination on the merits." *Deja Vu*

*of Nashville, Inc. v. Metro. Gov't of Nashville*, 274 F.3d 377, 400 (6th Cir. 2001) (discussing *Freedman v. Maryland*, 380 U.S. 51, 57–59 (1965)) (citations and internal quotation marks omitted).

The original City of Troy Sign Ordinance imposed a prior restraint because the right to display a sign that did not come within an exception as a flag or as a "temporary sign" depended on obtaining either a permit from the Troy Zoning Administrator or a variance from the Troy Building Code Board of Appeals. The standards for granting a variance contained multiple vague and undefined criteria, such as "public interest," "general purpose and intent of this Chapter," "adversely affect[ing]," "hardship," and "practical difficulty." Additionally, even meeting these criteria did not guarantee grant of a variance, since the Board retained discretion to deny it. The variance scheme therefore gave unbridled discretion to the Troy Building Code Board of Appeals and did not meet the "narrow, objective, and definite standards" required for constitutionality. *See Forsyth Cty.*, 505 U.S. at 131. It "g[ave] a government official or agency substantial power to discriminate based on the content or viewpoint of speech by suppressing disfavored speech or disliked speakers," allowing a facial challenge to the permitting scheme. *City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 759 (1988). Therefore, the City of Troy Sign Ordinance as in effect before the 2018 amendment created through its variance scheme an unconstitutional prior restraint on speech.

A

The City of Troy amended the variance provision to set forth additional standards for granting variances, and it submitted that the amendment rendered the issue of prior restraint moot. International Outdoor conceded that the amended ordinance rendered moot its claims for declaratory and injunctive relief arising from the application of the Sign Ordinance and variance process, but not its claim for damages. This court has stated that, although a change in law renders moot pertinent challenges to the original law, claims for damages are nonetheless preserved. *Midwest Media Prop. LLC v. Symmes Twp.*, 503 F.3d 456, 460–61 (6th Cir. 2007). Such damages would presumably run from the time the variance was denied, November 20, 2015, until October 4, 2018, when the Amended Ordinance took effect.

A voluntary amendment does not always render First Amendment claims moot. For example, such claims may survive where there is no guarantee that the amendment will remain, or where the change raises suspicion of not being genuine. *See Speech First, Inc. v. Schlissel*, 939 F.3d 756, 769–70 (6th Cir. 2019). But in spite of the somewhat suspicious timing of the amendment of the Sign Ordinance within days after International Outdoor filed its motion for summary judgment, there is no indication that the City of Troy intends to repeal the amendment. In *Speech First*, the change concerned an ad hoc regulatory action and an assurance from a Vice President for Student Affairs who was not shown to have authority over the policies of the University of Michigan. *Id*. at 769. Here, by contrast, the City of Troy enacted an amendment to its Sign Ordinance that concerned not only the challenged variance provision, but also made extensive changes to other terms. The change of the unconstitutional variance provisions by the City of Troy appears therefore to be genuine and does not shift the burden of showing mootness to the City of Troy. *See Speech First*, 939 F.3d at 770.

We agree with the district court that the amendment of the Sign Ordinance renders pending challenges to the original law moot, and that the district court properly dismissed on that basis International Outdoor's claims for declaratory and injunctive relief. But even where the claim for injunctive and declaratory relief is rendered moot, "the existence of a damages claim ensures that this dispute is a live one and one over which Article III gives us continuing authority." *Blau v. Fort Thomas Pub. Sch. Dist.*, 401 F.3d 381, 387 (6th Cir. 2005). International Outdoor's damages claim was therefore properly preserved even after the dismissal of its claim for injunctive and declaratory relief.

B

The City of Troy argues that International Outdoor's claim for damages on the prior restraint count must be dismissed, because the variance provision was severable from the original Sign Ordinance and International Outdoor would not qualify for a permit without a variance, due to the excessive size, height, and setback of its proposed billboards. International Outdoor does not challenge the permitting scheme of the City of Troy as a whole in Count I, but only its variance provisions. The variance provisions introduce an impermissible prior restraint, *see* Part II *supra*, pp. 5–7. If those provisions can be severed, so that no grant of a variance would be

possible, the remaining permitting scheme would not allow International Outdoor to erect its proposed billboards in any case, because International Outdoor would need a variance from the otherwise generally applicable dimensional and setback limitations.

"Severability of a local ordinance is a question of state law." *City of Lakewood*, 486 U.S. at 772. Michigan courts have long recognized that "[i]t is the law of this State that if invalid or unconstitutional language can be deleted from an ordinance and still leave it complete and operative then such remainder of the ordinance be permitted to stand." *In re Request for Advisory Opinion Regarding Constitutionality of 2011 PA 38*, 806 N.W.2d 683, 713 (Mich. 2011) (quoting *Eastwood Park Amusement Co. v. Stark*, 38 N.W.2d 77, 81 (Mich. 1949)). The Supreme Court of Michigan held in *Melconian* that where "the provisions of the ordinance are valid and enforceable" except for "[t]he sections or parts of sections which are invalid" and which "are distinctly separable from the remainder," the provisions "held valid constitute in themselves a complete enactment, and may be enforced." *Melconian v. City of Grand Rapids*, 188 N.W. 521, 527 (Mich. 1922), *accord Genesee Land Corp. v. Leon Allen & Assocs.*, 213 N.W.2d 283, 285–86 (Mich. Ct. App. 1973).

The official and applicable version of the Sign Ordinance contained a severability clause. The challenged variance scheme is a distinct provision of the Sign Ordinance, 85.01.08.B.1, within the Appeals section, 85.01.08. Removal of the variance provision does not invalidate the entire ordinance, and the remaining provisions are not challenged by International Outdoor. Therefore, the variance provision may be severed.

But severing the variance provision also means that International Outdoor loses its claim to damages under *Midwest Media*, 503 F.3d at 464–65, since it needed the variance precisely because it did not qualify for a permit under the size, height, and setback requirements for signs under the City of Troy Sign Ordinance.

\* \* \*

The amendment of the ordinance rendered International Outdoor's claim for injunctive and declaratory relief moot, while the severability of the variance did the same to its claim for damages.

We therefore affirm the district court's grant of the City of Troy's cross-motion for summary judgment on Count I, prior restraint.

### III

International Outdoor also appeals the district court's grant of the City of Troy's motion to dismiss the claim that the City of Troy's sign ordinance imposes content-based restrictions without a compelling government interest.

Before filing its motion for summary judgment on Count II, *see* Part II *supra*, pp. 5–10, the City of Troy moved the district court to dismiss Count I, unconstitutional prior restraint, and Count II, content-based restrictions. In its motion to dismiss, the City of Troy cited only Federal Rule of Civil Procedure 12(b)(6) but not Rule 12(b)(1), even though it alleged that International Outdoor both lacked standing and failed to state a claim upon which relief may be granted. The City of Troy argued that International Outdoor did not state a claim upon which relief might be granted when it alleged its unconstitutional-prior-restraint and content-based-restrictions claims. Relying on *Midwest Media*, 503 F.3d at 460–62, the City of Troy also argued that International Outdoor lacked standing, because it had not specifically alleged that the section of the ordinance regulating the size, height, and setback of signs was invalid, and that such restrictions would preclude International Outdoor from erecting its billboards regardless of other provisions of the Sign Ordinance. Consequently, the City of Troy argued, International Outdoor could not show redressability of its claimed injuries, which deprived it of standing to challenge the ordinance.

The district court stated that the City of Troy had moved to dismiss the case pursuant to Federal Rule of Civil Procedure 12(b)(6), but that it had also argued that International Outdoor lacked standing. The district court then concluded that the City of Troy had "move[d] under the wrong rule" and that "[the district] [c]ourt, therefore, shall consider the argument under Fed. R. Civ. P. 12(b)(1)," because "the Rule 12(b)(6) challenge becomes moot if this court lacks subject matter jurisdiction." The district court disagreed, however, with the City of Troy's argument that *Midwest Media* was controlling, because it held that International Outdoor challenged the entire ordinance, not just its individual provisions, and that, consequently, International Outdoor could show redressability of its injury. The district court therefore concluded that International

Outdoor had standing to bring an action against the City of Troy. Having thus clarified its subject-matter jurisdiction, the district court proceeded to a Rule 12(b)(6) analysis of Count I, prior restraint, and of Count II, content-based restriction. It dismissed only Count II after concluding that *Central Hudson*, rather than *Reed*, was the controlling precedent in this case, and upon finding that the ordinance provisions satisfied an intermediate level of scrutiny. The district court denied the motion to dismiss as to Count I, thus allowing it to proceed to discovery.

We review *de novo* a district court's decision to dismiss for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). *Cartwright v. Garner*, 751 F.3d 752, 760 (6th Cir. 2014). A district court's factual findings are reviewed for clear error, and its application of the law to the facts is reviewed *de novo*. *Ibid*. We also review *de novo* a district court's dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6). *Benzon v. Morgan Stanley Distribs., Inc*., 420 F.3d 598, 605 (6th Cir. 2005). "[W]e accept as true all non-conclusory allegations in the complaint and determine whether they state a plausible claim for relief." *Delay v. Rosenthal Collins Grp., LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009).

A

*Midwest Media* held, following *Prime Media, Inc. v. City of Brentwood*, 398 F.3d 814, 824 (6th Cir. 2005), that the plaintiffs there lacked standing to challenge the sign ordinance because they failed to show redressability. *Midwest Media*, 503 F.3d at 465. However, both *Midwest Media* and *Prime Media*, which presented very similar issues, are distinguishable from our case.

In *Midwest Media*, the plaintiffs filed nine applications for permits to build billboards in Symmes Township. *Id*. at 458–59. All nine applications were denied based on two grounds: (1) off-site advertising was prohibited, and (2) the proposed billboards exceeded the township's size and height restrictions. *Id*. at 459–60. The plaintiffs challenged the off-premises advertising ban as unconstitutional and challenged the permitting process as lacking procedural safeguards. *Id*. at 450. This court had previously rejected a challenge to size and height restrictions of a sign ordinance in *Prime Media*, and the plaintiffs in *Midwest Media* did not challenge those. *Ibid*.; *see Prime Media,* 398 F.3d at 818–21. Plaintiffs sought an injunction, damages, and attorney's

fees.   *Ibid.*   Symmes Township subsequently amended its ordinance, thus rendering the plaintiffs' injunctive claim moot.  *Ibid.*  *Midwest Media* held that the mootness of the injunctive claim did not render plaintiffs' damages claim moot.  *Id*. at 460–61.  However, *Midwest Media* also held that the plaintiffs failed to show standing to bring the action in the first place.  *Id*. at 461.  Quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992), and *Simon v. E. Ky. Welfare Rights Org*., 426 U.S. 26, 41 (1976), the *Midwest Media* court enumerated the required elements of standing:

> To meet the "irreducible minimum" requirements of constitutional standing, plaintiffs must demonstrate (1) that they "have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical," (2) that a causal link exists "between the injury and the conduct complained of,"—i.e., that the "injury . . . fairly can be traced to the challenged action of the defendant," and (3) that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  Each requirement is "an indispensable part of the plaintiff's case" and "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof."

*Midwest Media*, 503 F.3d at 461 (citations omitted).  Following the reasoning in *Prime Media*, the *Midwest Media* court found that the plaintiffs failed the redressability test: even if they succeeded at challenging the constitutionality of the original sign ordinance based on its prohibition on off-site advertising, the off-site-advertising-ban provision was nonetheless severable, and plaintiffs would still fail to qualify for a permit based on the size and height restrictions of the ordinance, which provisions they chose not to challenge after *Prime Media* upheld similar restrictions as constitutional.  *Id*. at 461–62; *see Prime Media*, 398 F.3d at 824 ("[T]he height and size restrictions directly advance [government's] interest because billboards that are smaller and shorter are less apt to interfere with aesthetic or traffic safety concerns." *Id*. at 822.); *see also Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 507–08 (1981) ("Nor can there be substantial doubt that the twin goals that the ordinance seeks to further—traffic safety and the appearance of the city—are substantial governmental goals.").  Since the plaintiffs failed to show redressability of their claim, *Midwest Media* held that the plaintiffs lacked Article III standing to bring their claims. *Id*. at 461, 464.

But as mentioned above, this case is distinguishable from both *Midwest Media* and *Prime Media*: the variance provision of the City of Troy Sign Ordinance challenged in Count I is not independent from other provisions of the ordinance, but rather inextricably linked to them by providing a way of relaxing the very restrictions imposed by the Sign Ordinance.  It would amount to circular logic to say that International Outdoor lacks standing to challenge the ordinance because it challenges the very provision that gives it standing to challenge the ordinance.  Such an approach would render the constitutionality of most variance provisions unreviewable.  Contrary to *Midwest Media* and *Prime Media*, the facts of this case allow International Outdoor to retain standing and proceed with its remaining claims as to Count II, content-based restrictions, even after its claim for damages under Count I fails.[1]  Consequently, the size and height restrictions of the ordinance cannot be used to deny International Outdoor standing on its content-based restrictions claim due to lack of redressability, because the variance provision would allow International Outdoor to obtain redress.

B

Under the First Amendment applicable to the states through the Fourteenth Amendment, a government, such as a municipal government vested with state authority, "has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) (quoting *Police Dept. of Chicago v. Mosley*, 408 U.S. 92, 95 (1972)).  Laws that "target speech based on its communicative content . . . are presumptively unconstitutional and may be justified only if the government proves that they are

---

[1]Additionally, the dissent contends that International Outdoor lacks standing to challenge the ordinance's treatment of certain signs, including temporary signs, because International Outdoor does not seek to erect temporary signs. In the dissent's view, International Outdoor cannot demonstrate an independent injury in fact arising from application of these provisions.  We disagree.

International Outdoor alleges that the ordinance regulates signs differently based on the sign's content. One of the provisions International Outdoor cites in the complaint as an example of such differential treatment is the ordinance's requirement that an erector obtain a permit in advance of erecting all signs but exempting from this requirement certain signs based on their content, including temporary signs. International Outdoor's complaint alleges that because its signs are not exempt from the permitting process, it paid for and applied for a permit to erect its billboards. Construing the complaint's allegations in the light most favorable to it, International Outdoor has sufficiently alleged facts showing, at a minimum, that it incurred costs that other erectors were exempt from because its proposed signs were not afforded the same favored treatment under the ordinance.  This is sufficient to confer Article III standing.

narrowly tailored to serve compelling state interests." *Reed*, 576 U.S. at 163. Regulation of speech is content-based and therefore subject to strict scrutiny "if a law applies to particular speech because of the topic discussed or the idea or message expressed"; some obvious facial distinctions based on a message include "defining regulated speech by particular subject matter" or "by its function or purpose." *Reed*, 576 U.S. at 163–64. The "crucial first step in the content-neutrality analysis" involves "determining whether the law is content neutral on its face." *Reed*, 576 U.S. at 165. A facially content-based law is "subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of 'animus toward the ideas contained' in the regulated speech." *Ibid.* (quoting *Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 429 (1993)). As the Court in *Reed* explained, "[b]ecause strict scrutiny applies either when a law is content based on its face or when the purpose and justification for the law are content based, a court must evaluate each question before it concludes that the law is content neutral and thus subject to a lower level of scrutiny." *Id.* at 166.

It follows that the intermediate-scrutiny standard applicable to commercial speech under *Central Hudson*, 447 U.S. at 563, applies only to a speech regulation that is content-neutral on its face. That is, a regulation of commercial speech that is not content-neutral is still subject to strict scrutiny under *Reed*.

1

Subsequent to *Reed*, several circuit courts have held that, notwithstanding *Reed*, the *Central Hudson* standard still applies to the regulation of commercial speech.

In *Aptive Environmental, LLC v. Town of Castle Rock*, 959 F.3d 961 (10th Cir. 2020), the Tenth Circuit considered an ordinance imposing curfew and registration requirements on commercial solicitors but exempting non-commercial solicitors from such requirements. Differentiating between commercial and non-commercial speech, *Aptive* stated:

> While the Supreme Court has indicated that commercial speech is entitled to "lesser protection" than noncommercial speech, *Cent. Hudson*, 447 U.S. at 562–63, 100 S. Ct. 2343, this most certainly does not mean that commercial speech is entitled to no protection, *see, e.g.*, *Discovery Network*, 507 U.S. at 420–21, 113 S. Ct. 1505 ("Speech likewise is protected . . . even though it may involve a

solicitation to purchase or otherwise pay or contribute money." (citations omitted)).

959 F.3d at 981.

Analogizing to *Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 412–13, 428–29 (1993), where the Supreme Court struck down a law that banned commercial but not noncommercial newsracks, the Tenth Circuit recognized that the curfew requirement was content based and rejected arguments that the curfew was either not subject to First Amendment scrutiny at all or that it could be analyzed as a mere content-neutral restriction on time, place, and manner. *Aptive*, 959 F.3d at 982–83. However, instead of applying the *Reed* standard, the court proceeded without much explanation to apply the *Central Hudson* standard: "Our prior cases and the parties agree that—assuming that the Curfew implicates the First Amendment, as we have just decided—our analysis is governed by *Central Hudson Gas & Electric Corporation v. Public Service Commission*, *supra*." *Aptive*, 959 F.3d at 986.

Although *Aptive* held that the ordinance failed to satisfy even that less stringent intermediate standard of review, *id*. at 999, the court did not state correctly or apply the *Reed* standard, under which content-based restrictions should be analyzed. *Aptive* discusses *Reed* only in a footnote, merely focusing on *Reed*'s "rel[iance] on *Discovery Network* to reject the argument that '[a] law that is content based on its face' should be analyzed as a 'content neutral' regulation because the distinctions drawn 'can be justified without reference to the content of the regulated speech.'" *Aptive*, 959 F.3d at 982 n.6 (quoting *Reed*, 576 U.S. at 165–68). But *Aptive* does not discuss the standard explicitly adopted by *Reed*, even though it was set forth in the very same passage that *Aptive* quoted:

> Because strict scrutiny applies either when a law is content based on its face or when the purpose and justification for the law are content based, a court must evaluate each question before it concludes that the law is content neutral and thus subject to a lower level of scrutiny.

*Reed*, 576 U.S. at 166. We therefore disagree with *Aptive*'s reliance on the *Central Hudson* standard even when analyzing content-based restrictions on speech.

In *Greater Philadelphia Chamber of Commerce v. City of Philadelphia*, 949 F.3d 116 (3d Cir. 2020), the Third Circuit considered a Philadelphia ordinance that prohibited employers from inquiring into a prospective employee's wage history in setting or negotiating that employee's wage. *Id*. at 121. The Third Circuit reversed the ruling of the district court that the inquiry provision of the ordinance violated the First Amendment. *Ibid*. It found that the ordinance regulated commercial speech that proposed a commercial transaction and as such satisfied intermediate scrutiny under *Central Hudson*. *Id*. at 136–37, 156–57.

In its analysis, *Greater Philadelphia* rejected the application of strict scrutiny to commercial speech, stating that "the Supreme Court has consistently applied intermediate scrutiny to commercial speech restrictions, even those that were content- and speaker-based, particularly when the challenged speech involves an offer of employment." *Id*. at 138. To support this statement, *Greater Philadelphia* cites Supreme Court decisions from the 1990s and does not mention *Reed* anywhere in its opinion. While *Greater Philadelphia* concedes that "[w]e realize, of course, that it may be appropriate to apply strict scrutiny to a restriction on commercial speech that is viewpoint-based," *id*. at 139, it limits strict scrutiny to cases such as "[i]f the regulation has the practical effect of promoting some messages or some speakers based on the content of the speech or the identity of the speaker, something more than intermediate scrutiny may be necessary to survive a First Amendment inquiry." *Ibid*.

*Greater Philadelphia* relies on *R.A.V. v. City of St. Paul*, 505 U.S. 377, 387 (1992), in asserting that "the rule that content-based speech restrictions are subject to strict scrutiny is 'not absolute' and is inapplicable when the restriction does not 'raise[ ] the specter that the Government may effectively drive certain ideas or viewpoints from the marketplace.'" *Greater Philadelphia*, 949 F.3d at 139 (quoting *R.A.V.*, 505 U.S. at 387). But such an approach has been rejected in *Reed* when speech other than commercial is involved. *See* 576 U.S. at 166 ("[S]trict scrutiny applies either when a law is content based on its face or when the purpose and justification for the law are content based."). Because the ordinance in *Greater Philadelphia* regulated commercial speech only, and the ordinance of the City of Troy regulated also non-commercial speech, *Greater Philadelphia* is distinguishable from this case.

In *Vugo, Inc. v. City of New York*, the Second Circuit ruled in favor of the City on a First Amendment challenge to City rules prohibiting video advertising in for-hire vehicles ("FHVs") such as Uber and Lyft, but not in yellow or green taxicabs. *Vugo, Inc. v. City of New York*, 931 F.3d 42, 44–45 (2d Cir. 2019), *cert. denied sub nom. Vugo, Inc. v. New York, NY*, No. 19-792, 2020 WL 1978946 (U.S. Apr. 27, 2020). The Second Circuit analyzed the restriction under *Central Hudson*, stating that "[t]he parties agree that the prohibition on advertising in FHVs is a content-based restriction on commercial speech and, as such, is subject to intermediate scrutiny." *Id*. at 44. The court then found that the rule satisfied intermediate scrutiny.

> *Vugo* discussed *Reed* in a footnote, *id*. at 49 n.6, stating that the City
>
> does not dispute that the ban, construed as applying only to commercial advertising, is content-based. We see no reason to conclude otherwise. "Government regulation of speech is content-based if a law applies to particular speech because of the topic discussed or the idea or message expressed."

*Id*. at 49 n.6 (quoting *Reed*, 576 at 163). *Vugo* distinguished application of the strict-scrutiny standard to some commercial-speech restrictions under *Sorrell*, stating that "[h]ere, by contrast, the City's ban covers the full range of commercial advertising. There is no suggestion that the City is trying to 'quiet[ ]' truthful speech with a particular viewpoint that it 'fear[s] . . . might persuade.'" *Id*. at 50 n.7 (quoting *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 576 (2011)).

*Vugo* is distinguishable from our case, because the City of New York's rule regulated commercial speech only, as was stipulated by the parties. *See id*. at 48 n.5. As the Supreme Court explained in *Sorrell*, "the First Amendment does not prevent restrictions directed at commerce or conduct from imposing incidental burdens on speech." *Sorrel*, 564 U.S. at 567 (2011). But when an enacted law "does not simply have an effect on speech, but is directed at certain content and is aimed at particular speakers," it may run afoul of the First Amendment. *Ibid*. *Vugo* considered the City of New York's restrictions on FHV advertising and concluded that they did not merit strict-scrutiny review. *Vugo*, 931 F.3d at 50 n.7. Since International Outdoor challenges an ordinance that regulates both commercial and non-commercial speech, the *Reed* standard applies in this case, and the *Vugo* reasoning that relies on *Central Hudson* is not applicable.

In *Lone Star Security & Video, Inc. v. City of Los Angeles*, 827 F.3d 1192, 1200 (9th Cir. 2016), the Ninth Circuit considered a First Amendment challenge to five municipal ordinances regulating mobile billboards. Following *Reed*, *Lone Star* first considered whether the regulations were content neutral. Concluding that the ordinances regulated advertising, it held that "the mobile billboard bans regulate the manner—not the content—of affected speech," and are therefore content-neutral restrictions on speech. *Id*. at 1200. However, commenting on the plaintiff's conflating "advertising" speech with "commercial" speech, where the plaintiff sought to display political as well as commercial messages on its mobile billboards, *Lone Star* added in a footnote:

> although laws that restrict only commercial speech are content based, see *Reed* [*v. Town of Gilbert*], 135 S. Ct. at 2232, such restrictions need only withstand intermediate scrutiny. *See Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of New York*, 447 U.S. 557, 564, 100 S. Ct. 2343, 65 L. Ed. 2d 341 (1980) (requiring that laws affecting commercial speech seek to implement a substantial governmental interest, directly advance that interest, and reach no further than necessary to accomplish the given objective).

*Lone Star*, 827 F.3d at 1198 n.3. It then concluded that the mobile-billboard regulations were narrowly tailored as they "promote[d] a substantial government interest that would be achieved less effectively absent the regulation." *Id*. at 1200 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989)). It also held that the mobile-billboard ordinances were "a time, place, and manner regulation" that "l[eft] open ample alternative channels for communication," satisfying the First Amendment. *Id*. at 1201 (second quoting *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984)).

At the end of last term, the Supreme Court decided *Barr v. American Ass'n of Political Consultants, Inc*., 140 S. Ct. 2335, 2346–50, 2356 (2020), holding that a government-debt-collection exception to a prohibition on robocalls to cell phones under the Telephone Consumer Protection Act constituted a content-based restriction that failed strict scrutiny, but that the exception could be severed without invalidating the statute restricting robocalls. *American Association of Political Consultants* thus repudiated the approach taken earlier by some of the circuit courts discussed above. Pursuant to *American Association of Political Consultants*, strict scrutiny applies to content-based restrictions.

2

The Supreme Court has flatly confirmed the requirement to apply *Reed*'s strict-scrutiny standard, after this court had applied intermediate scrutiny by using a less stringent "'practical' test for assessing content neutrality" in *Wagner v. City of Garfield Heights*, 577 F. App'x 488, 494 (6th Cir. 2014), *cert. granted*, *judgment vacated*, 135 S. Ct. 2888 (2015). In *Wagner*, a City of Garfield Heights ordinance treated political and non-political signs differently, including restricting the size of political signs more than the size of certain non-political signs, but subjecting political signs to fewer overall restrictions. 577 F. App'x at 493. Wagner, a resident of Garfield Heights, Ohio, placed on his lawn a political sign that was larger than the City allowed for this type of sign. *Id*. at 489. The district court found that the ordinance was content based because the City was required to determine whether or not a sign is political before it can determine which provision of the City code applies. *Id*. at 493. The district court further found that the City's restriction on Wagner's political speech violated the First Amendment. *Id*. at 489. This court applied a "'practical' test for assessing content neutrality," concluded that the ordinance imposed only a content-neutral restriction on the time, place, and manner of speech, determined that the City had satisfied the intermediate scrutiny applicable to such regulations, and reversed. *Id*. at 489, 493–94. The Supreme Court granted a petition for writ of certiorari, vacated our judgment, and remanded the case to us for further consideration in light of *Reed*. 135 S. Ct. at 2888. On remand, we applied strict scrutiny to Garfield Heights's sign restrictions and concluded that the ordinance was not narrowly tailored to further the city's interest in promoting aesthetic appeal and traffic safety, thus failing strict scrutiny. *Wagner v. City of Garfield Heights*, 675 F. App'x 599, 607 (6th Cir. 2017) (per curiam). We therefore affirmed the initial decision of the district court to award Wagner an injunction. *Id.* at 600, 607.

Similarly, this court has since applied strict scrutiny to a constitutional challenge to Tennessee's Billboard Act based on the "on-premises exception" from permitting requirements for signs relating to the use or purpose of the real property on which the sign is physically located, such as signs advertising the activities, products, or services offered on those premises. *Thomas v. Bright*, 937 F.3d 721, 724 (6th Cir. 2019). Thomas posted a sign supporting the 2012 U.S. Summer Olympics Team on a billboard he owned on an otherwise vacant lot. *Ibid.*

Tennessee had denied Thomas a permit and ordered the sign removed since it did not qualify for the on-premises exception: there were no Olympics-related activities on an empty lot. *Ibid*. Thomas sued, and the district court found that the Act violated the First Amendment, since "the on-premises exception was content-based and thus subject to strict scrutiny, failed to survive strict scrutiny, and was not severable from the rest of the Act." *Ibid*. This court affirmed, recognizing that *Reed* had overruled Sixth Circuit precedent on this point, *Wheeler v. Comm'r of Highways*, 822 F.2d 586 (6th Cir. 1987). *Thomas*, 937 F.3d at 724.

In *Wheeler*, the appellees were denied a permit to display a political or religious message on a billboard, which was adjacent to an interstate highway and which would not qualify as an on-premise sign. 822 F.2d at 588. The district court held that the Kentucky Billboard Act and its implementing regulations were "unconstitutional on their face because they discriminated against non-commercial speech in favor of commercial speech." *Id*. at 587. This court reversed, finding that "the statute and regulations are content neutral and narrowly tailored to serve substantial state interests" of preserving Kentucky's aesthetic values and highway safety. *Id*. at 587, 595. But after *Reed*, *Thomas v. Bright* expressly overruled *Wheeler*. *See Thomas*, 937 F.3d at 724.

To be sure, both *Wagner* and *Thomas* concerned non-commercial speech. But the regulations in both cases were deemed unconstitutional due to their content-based nature: they required an inspection of the message to determine whether it was political, as in *Wagner*, or related to any on-premises activity, as in *Thomas*, in order to determine the sign's permissibility under the regulations.

Here, the district court determined that the speech at issue—erecting advertising billboards—was commercial speech and therefore not subject to strict scrutiny. It held that the ordinance provisions satisfied intermediate scrutiny under *Central Hudson*, 447 U.S. at 563, and granted the City of Troy's motion to dismiss Count II.

However, in so doing, the district court applied the wrong standard: the Sign Ordinance imposed a content-based restriction by exempting certain types of messages from the permitting requirements, such as flags and "temporary signs" that included on- and off-premises real-estate

signs, "garage, estate or yard sale" signs, "non-commercial signs[,]" "[p]olitical signs[,]" "holiday or other seasonal signs[,]" and "constructions signs . . . . " Thus, the ordinance regulated both commercial and non-commercial speech but treated them differently, requiring the City of Troy to consider the content of the message before deciding which treatment it should be afforded. But for content-based restrictions on speech, strict and not intermediate scrutiny applies pursuant to *Reed.* 135 S. Ct. at 2224; *see also Am. Ass'n of Political Consultants, Inc.*, 140 S. Ct. at 2346–50, 2356; *Wagner*, 675 F. App'x at 607; *Thomas*, 937 F.3d at 724.

We therefore vacate the district court's grant of the City of Troy's motion to dismiss Count II, content-based restriction, and remand for consideration consistent with the holding in *Reed*.

IV

International Outdoor also appeals the denial of an award of its attorney's fees as a prevailing party under 42 U.S.C. § 1988.

A district court's decision to grant or deny attorney's fees is reviewed for abuse of discretion. *Morrison v. Lipscomb*, 877 F.2d 463, 469 (6th Cir. 1989). "A district court abuses its discretion when it relies upon clearly erroneous findings of fact, applies the law improperly, or uses an erroneous legal standard." *The Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 702 (6th Cir. 2016) (citation omitted).

The Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, provides:

> In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318 . . . , or title VI of the Civil Rights Act of 1964 . . . , the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

42 U.S.C. § 1988(b). "Congress intended to permit the . . . award of counsel fees only when a party has prevailed on the merits of at least some of his claims." *Hanrahan v. Hampton*, 446 U.S. 754, 758 (1987) (per curiam). "The plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought or comparable relief through a consent decree

or settlement." *Farrar v. Hobby*, 506 U.S. 103, 111 (1992) (internal citations omitted) (citing *Hewitt v. Helms*, 482 U.S. 755, 760 (1987) and *Maher v. Gagne*, 448 U.S. 122, 129 (1980)).

In *Hewitt v. Helms*, the Court answered in the negative "the peculiar-sounding question whether a party who litigates to judgment and loses on all of his claims can nonetheless be a 'prevailing party.'" 482 U.S. at 757. Helms obtained no relief in his § 1983 action for alleged due process violations by state prison officials, and "[t]he most that he obtained was an interlocutory ruling that his complaint should not have been dismissed for failure to state a constitutional claim." *Id.*, at 760. More on point, "a judicial pronouncement that the defendant has violated the Constitution, unaccompanied by an enforceable judgment on the merits, does not render the plaintiff a prevailing party." *Farrar v. Hobby*, 506 U.S. at 112–13. Standing alone, "the moral satisfaction [that] results from any favorable statement of law" does not establish prevailing party status. *Hewitt*, 482 U.S. at 762.

The district court ruled that International Outdoor was not a prevailing party because it did not obtain court-ordered relief. International Outdoor alleges that it had established that the City of Troy's variance process was an unconstitutional prior restraint and that the City amended its ordinance because of the court's finding to that effect. As the district court stressed in its order denying the motion for attorney's fees, "it did not declare the City of Troy's variance procedure to be facially unconstitutional. Rather, the court ruled that Count I did not fail to state a claim." Such a judicial pronouncement does not bestow prevailing party status on International Outdoor. *See Hobby*, 506 U.S. at 112–13. Instead, the district court disposed of the claims of International Outdoor by issuing an order against it on both counts, thus rendering the City of Troy the prevailing party.

The City of Troy amended its Sign Ordinance without a judgment, court-ordered consent decree, or even preliminary injunction. But "[a] defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change." *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 605 (2001). The voluntary amendment of the ordinance by the City of Troy does not constitute court-ordered relief necessary to

establish prevailing-party status.  International Outdoor is therefore not a prevailing party and is not entitled to attorney's fees under 42 U.S.C. § 1988.

Consequently, the district court did not abuse its discretion by denying International Outdoor's motion for an award of attorney's fees based on its rulings on the merits.  *See Hescott v. City of Saginaw*, 757 F.3d 518, 522 (6th Cir. 2014).  However, since we reverse and remand the district court's ruling granting the City of Troy's motion to dismiss a claim of unconstitutional content-based restriction, we must also vacate and remand the district court's denial of International Outdoor's motion for attorney's fees pending reconsideration of the motion to dismiss.  Any future entitlement to attorney's fees will await the outcome of further proceedings below.

V

For the reasons explained above, we **AFFIRM** the district court's grant of the City of Troy's motion for summary judgment on Count I regarding unconstitutional prior restraint, but **VACATE** the district court's grant of the City of Troy's motion to dismiss Count II, content-based restriction, and **REMAND** for reconsideration under the *Reed* standard.  We also **VACATE** and **REMAND** the district court's denial of International Outdoor's motion for attorney's fees pending reconsideration of the City of Troy's motion to dismiss.

---

## CONCURRING IN PART AND DISSENTING IN PART

---

SUHRHEINRICH, J., concurring in part and dissenting in part. I concur in the majority's resolution of International Outdoor's prior-restraint claim (Count I), but I dissent from the portion of the opinion directing the district court to apply strict scrutiny to a provision in Troy's sign ordinance that defines "temporary signs" based on their content (Count II). Because International Outdoor seeks to erect permanent 70-foot billboards, not temporary signs, I would hold that it lacks standing to challenge the temporary-sign provision.

The "irreducible constitutional minimum of standing" requires (1) a concrete injury that is (2) "fairly traceable to the defendant's allegedly unlawful conduct" and is (3) "likely to be redressed by the requested relief." *Lujan*, 504 U.S. at 560. The injury in this case—being denied permission to erect billboards that are vastly larger than permitted by the height and size restrictions of Troy's sign ordinance—is not traceable to the temporary-sign provision. Thus, International Outdoor does not have standing to contest that provision. *See Prime Media, Inc. v. City of Brentwood*, 485 F.3d 343, 348, 353 (6th Cir. 2007) (holding that an outdoor-advertising company seeking to erect an oversized billboard lacked standing to challenge unrelated provisions of a city's sign ordinance (including sections that gave favorable treatment to flags, holiday signs, and temporary real-estate signs) because "none of th[ose] challenges [were] supported by an *independent* injury in fact"); *id.* at 350–51 (determining that "[t]he plaintiff's standing with regard to the size and height requirements does not magically carry over to allow it to litigate other independent provisions of the ordinance without a separate showing of an actual injury under those provisions").

For these reasons, I dissent from Section III of the majority opinion. Because I would affirm the dismissal of both underlying claims, I also dissent from the majority's decision to vacate and remand the district court's denial of International Outdoor's motion for attorney's fees, as moot.